IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-cr-00293-RBJ

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

**JOHN VAN WU**

       Defendant.

---

**MOTION TO DISMISS FOR FAILURE TO PRESERVE EXCULPATORY
EVIDENCE, OR IN THE ALTERNATIVE FOR APPROPRIATE SANCTIONS**

---

Dr. John Wu, through counsel, respectfully requests that this Court dismiss the indictment, or in the alternative, to exercise its supervisory power and order appropriate sanctions due to the government's destruction of evidence and outrageous governmental conduct.  As grounds, Dr. Wu asserts the following:

**I.  Procedural History and Factual Background**

Dr. Wu is currently scheduled to begin trial on the Fraud Counts and related Falsification Counts on April 8, 2019.  On March 13, 2019, in preparation for the upcoming trial, undersigned counsel requested of the government that text messages between witnesses and Agent Tonozzi, which are referenced in some of Agent Tonozzi's reports, be provided.  Later that evening, Assistant United States Attorney Bryan Fields indicated that he was "gathering all of the 3500 materials

1

(including Special Agent Tonozzi's texts) and [would] provide it no later than two weeks before trial (and much sooner if it is finished before that.)"   Subsequent to that communication, Mr. Fields informed undersigned counsel that, due to an issue with Agent Tonozzi's phone, the text communications between Agent Tonozzi and witnesses had been destroyed.

On March 19, 2019, the government produced supplemental discovery.  This supplemental discovery included the limited text messages that Agent Tonozzi was able to recover. These text messages include material, substantive, and exculpatory evidence. In further discussions with the government, and based on what was produced, it is apparent that there are many text message exchanges with witnesses that were destroyed.

Agent Tonozzi blames an iPhone update for wiping all the texts that he had on his phone.  However, Agent Tonozzi made no effort to preserve or back up the material and exculpatory evidence that was contained on his presumably government-issued phone.  Additionally, Agent Tonozzi indicated to undersigned counsel that either one or two times after the first iPhone update wiped text communications with witnesses that the same thing happened.  The fact that Agent Tonozzi took no steps after the first time that iPhone update wiped his text messages with witnesses makes his failure to preserve or back up these messages intentional conduct.  That fact that it may have happened three times (Agent

Tonozzi cannot remember) without any effort to correct the issue and preserve witness communications constitutes outrageous governmental conduct.

The text messages that were able to be recovered and were produced are indicative of the substantive type of communication that Agent Tonozzi engaged in with witnesses via text messaging.  Additionally, and importantly, the substance of those text communications are not reported in Agent Tonozzi's reports.  Counsel is attaching as Exhibits some of the text messages that have been produced.  Below is a summary of the significance of some of the text messages that were recovered:

•    Exhibit #1 – Text communications with NN/Nhat:

The investigation of Dr. Wu started when NN was arrested in November 2014 for passing forged prescriptions under his and his family members' names.  NN admitted to passing forged prescriptions for oxycodone without Dr. Wu's knowledge.  NN then cut himself a deal with the state and federal authorities to get his felony drug charges dismissed by giving information against Dr. Wu.  During the pendency of this investigation and prosecution, NN faced additional charges of domestic violence and child abuse.

The text messages between NN and Agent Tonozzi reveal that, in addition to the benefits previously given to NN by the government for his cooperation, NN asked the government for assistance with traveling out of the country.  Mr. Fields now informs undersigned counsel that Agent Tonozzi did not assist in helping with his travel.  While undersigned counsel does not have access to what actually

happened, the text messages (getting A numbers for NN and his family members and "something in writing and a POC to call if shit hits the fan") certainly suggest that Agent Tonozzi was assisting NN and his family with logistical arrangements included helping with travel as NN and his family members are not citizens of the United States.   The fact that Agent Tonozzi knew and had discussions with NN about his immigration status and troubles was not documented in any of Agent Tonozzi's reports.   The fact that NN is not a citizen of the United States is exculpatory to Dr. Wu because NN could be deported if he:

- Has been convicted of an aggravated felony at any time after U.S. admission.

- Has been convicted of a drug crime (or a conspiracy or attempt to commit one), whether in the U.S. or another country, at any time after U.S. admission.

- Is, or at any time after U.S. admission has been, a drug abuser or addict.

- Has been convicted of domestic violence, stalking, child abuse, child neglect, or child abandonment, at any time after U.S. admission.

The government has assisted NN with all these criminal issues, which is of even greater benefit given NN's immigration status.   This great benefit to NN and his family members was not disclosed by Agent Tonozzi in any of his reports.   That NN asked the government for additional help is certainly relevant and exculpatory.

But for the "luck" that this text message was not destroyed, Dr. Wu never would have known this exculpatory information.

Agent Tonozzi also made calls to Colorado Medicaid on behalf of NN's father, who is also a witness in this case. This was not previously disclosed and is exculpatory.

Dr. Wu anticipates that the government may assert that this information is irrelevant in the trial of the Fraud and related Falsification charges. Dr. Wu strongly disagrees. All the text message exchanges with witnesses in the Fraud and related Falsification charges were destroyed by the actions of the government. As the text communications with NN reveal, the communications are substantive and exculpatory in nature. The substantive and exculpatory information in the texts is not documented in Agent Tonozzi's reports. This lack of inclusion of information in the report is an area ripe for cross-examination as to Agent Tonozzi's bias and motive. Because the Controlled Substance witnesses are not being called in the trial of the Fraud Charges, Dr. Wu is unable to use the comparison of the texts with Controlled Substance Witnesses to the DEA-6 reports to challenge the completeness and accuracy of Tonozzi's report writing and reveal his bias and interest in the Fraud Trial. The prejudice to Dr. Wu by the government's actions is significant.

Additionally, the information in these text exchanges with NN is clearly *Brady/Giglio* material. While it was eventually and fortunately disclosed, it was

not disclosed when it was learned by the government.   The government has a continuing duty to disclose this information.

• Exhibit #2 – Text communications with VP/Vu

Agent Tonozzi's DEA-6 report indicates that he interviewed VP at the Denver County Jail on December 12, 2018.  It also mentions that on December 26, 2018 that he sent VP a text.  What the DEA-6 does not mention is that Agent Tonozzi had substantive and exculpatory communications with VP via text on February 11, 2019.  In the text message, VP indicates that a patient of Dr. Wu's "had two major back surgery [sic]."   This is exculpatory because it is the government's theory that Dr. Wu was prescribing oxycodone for illegitimate purposes.  That the patient had two major back surgeries is certainly exculpatory information that should have been provided to the defense immediately.  Again, but for the "luck" of this not being destroyed like the rest of the text messages the witness' description of the patient having two major back surgeries would not have been known.

• Exhibit #3 – Text Communications with CH/Chris

Prior to receiving this text exchange, the defense had never heard of CH, nor knew that he had been interviewed by Agent Tonozzi.  The texts with CH are substantive in nature, yet no corresponding DEA-6 report or disclosure of this witness have been provided to the defense.  The defense fears that there are other

witnesses who Agent Tonozzi interviewed that have not been disclosed, but those text communications have now been destroyed.

•      Additional Evidence of Inaccurate Reports

On March 20, 2019, undersigned counsel and Assistant United States Attorneys Bryan Fields and Conor Flanigan had plans to meet to discuss pretrial issues.  As defense counsel had just received the text messages at issue in this Motion the afternoon before the meeting, she recognized that there was an issue but not the magnitude of the issue that further analysis is revealing.  So, the attorneys called Agent Tonozzi to ask him some questions about the destruction of evidence.   During that conversation, Agent Tonozzi indicated that he had communicated with Fraud Count witnesses, but all those text messages were destroyed.  Specifically, Agent Tonozzi mentioned that he had communicated with at least two of Jiang's by text message.  (There are three Jiang family members who are expected to testify in the Fraud Count trial).   Upon review of Agent Tonozzi's DEA-6, there is no mention in his report that he was communicating via text with any of the Jiangs.  There is an acknowledgment in Agent Tonozzi's DEA-6s that he communicated via text message with Fraud Count witnesses, T.D. (through his daughter) and M.V.E.B., but all these text exchanges have been destroyed.

## II.    Law

The Due Process Clause of the Fourteenth Amendment mandates that prosecutions comport with prevailing notions of fundamental fairness, and that includes access to evidence that allows them "to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).  "To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" Id. (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).

### A.    Due Process Violation – Youngblood

When exculpatory evidence is lost or destroyed by the government, as in this case, a due process violation may arise.  *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).  To establish a constitutional violation, the defendant must show: (1) the government acted in bad faith when it destroyed or lost evidence; (2) the lost or destroyed evidence possessed an apparent exculpatory value; (3) the evidence is such that comparable evidence cannot be obtained by reasonably available means. *Youngblood*, 488 U.S. at 58; *Trombetta*, 467 U.S. at 488-489.

### B.    Court's Supervisory Powers

If the Court finds that the government misconduct does not rise to the level of a constitutional violation, the Court should exercise its supervisory powers "[to] formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Williams*, 504 U.S. 36, 45 (1992)(internal citation and

quotation marks omitted).   "[G]uided by considerations of justice," *McNabb v. United States*, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943), and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, *McNabb*, supra, 318 U.S., at 340, 63 S.Ct., at 612; *Rea v. United States*, 350 U.S. 214, 217, 76 S.Ct. 292, 294, 100 L.Ed. 233 (1956); to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *McNabb*, supra, 318 U.S., at 345, 63 S.Ct., at 615; *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960); and finally, as a remedy designed to deter illegal conduct, *United States v. Payner*, 447 U.S. 727, 735–736, n. 8, 100 S.Ct. 2439, 2446–2447, n. 8, 65 L.Ed.2d 468 (1980).

### C.   Rule 16 and Brady, Giglio

As acknowledged in the Discovery and Conference Memorandum and Order (Doc. #13), the government must disclose material evidence which is favorable to the defendant as required by *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).   In the Discovery and Conference Memorandum and Order the government "acknowledges its continuing duty to make these disclosures." Doc. #13, p. 4, para. IB.

### III.    Analysis and Relief Sought

### A.    Due Process Violation - Youngblood

First, Dr. Wu requests that this Court dismiss the Indictment due to the due process violation that has occurred in this case.  The government acted in bad faith when it destroyed or lost evidence.  Dr. Wu may have had a weaker claim of bad faith but for the fact that the destruction happened multiple times with no effort by the government to preserve or back up text exchanges with witnesses. Additionally, Agent Tonozzi installed the update application one or two times after the same process previously wiped his texts.  It appears Agent Tonozzi made no effort to notify the prosecutor of what had occurred and instead waited until he was asked to produce this material.  Similarly, there is no indication that Agent Tonozzi contacted anyone in his IT department or otherwise to see if the witness statements could be recovered after the iPhone updates purportedly wiped all of these communications.  Agent Tonozzi took no steps to educate himself on the update process and how to prevent the destruction of evidence.  The actions of Agent Tonozzi are similar the ostrich burying his head in the sand analogy.  The Department of Justice's policy (which encompasses the DEA) regarding using e-communications states: "Prosecution team members should be particularly cautions in any e-communications with potential witnesses who are not law enforcement personnel to avoid substantive e-communications. Of course, any potentially discoverable information should be preserved, regardless of whether the

communication is written or oral."  Agent Tonozzi intentionally disregarded both parts of this guidance – he engaged in substantive e-communications with non-law enforcement witnesses and made no effort whatsoever, even after one destruction, to preserve the potentially discoverable material.  Agent Tonozzi should not be permitted to claim ignorance when he was on notice of the problem and made a willful decision to take no action to try to recover the evidence, notify anyone of the issue, preserve and backup the texts, or educate himself on how to avoid this problem in the future. His conduct constitutes bad faith.

The lost or destroyed evidence possessed an apparent exculpatory value. Agent Tonozzi was the only one who knew that he did not include exculpatory information in DEA-6 reports.  Agent Tonozzi knew that the texts were strong evidence of his motive and bias, was *Brady/Giglio* material, and would be strong impeachment evidence.  Agent Tonozzi does not have any record of who he communicated with via text and about what.  Given the exculpatory value of the text messages in the NN and VP exchanges, defense can now only extrapolate that there were additional exculpatory text messages that the government destroyed.

The evidence is such that comparable evidence cannot be obtained by reasonably available means.  When asked whether there was a log of whom he communicated, when he communicated, and the substance of what was communicated, Agent Tonozzi indicated that there was not.  When asked when the updates occurred that wiped the information, Agent Tonozzi could not answer that

question either.  The fact that there is no report whatsoever of Agent Tonozzi ever communicating with CH and that there is no mention of the *Brady/Giglio* evidence that is revealed in the text messages with NN and VP exemplifies why Agent Tonozzi's reports are not comparable evidence.  According to the ASUA Fields, Agent Tonozzi has not retained any notes.

### B.    Alternative Relief Sought

If the Court declines to find a due process violation and dismiss this case, Dr. Wu urges the Court to exercise its supervisory powers and implement an appropriately severe remedy.  Dr. Wu requests, in order of preference, that the Court dismiss the Distribution Counts and related Falsification Counts or dismiss the Fraud Counts and related Falsification Counts (for which all text messages with these witnesses have been destroyed).  Due to the exculpatory nature of the text messages that were preserved, suppressing the conversations with these witnesses is not a sanction in this case.  At a minimum, Dr. Wu requests that the Court give an instruction in both trials about the government's repeated destruction of evidence which has unfairly effected Dr. Wu's ability to present a complete defense and fully cross-examine witnesses.  The instruction should also contain language directing the jury to draw a negative inference from the government's destruction of evidence.

Given the time constraints for filing this motion, the defense has not had an opportunity to draft a proposed instruction yet.  As previously indicated,

undersigned counsel first received the supplemental discovery of the texts on the afternoon of March 19, 2019. She has not had sufficient time to fully analyze, investigate, research and present all arguments related to the government's destruction of evidence. However, with the pretrial conference set for March 21, 2019, counsel has attempted to address these issues the best she could in a very limited timeframe. As such, counsel reserves the right to raise additional issues and supplement arguments related to this Motion.

Dr. Wu respectfully requests an evidentiary hearing on the issues raised in this Motion. Counsel asks that the prosecutor require the attendance of Agent Tonozzi at that hearing. Because of the timing of this issue so close to trial, counsel's need for time to investigate factual issues and prepare for this hearing, and that the work briefing, investigating, and preparing for this evidentiary hearing takes away time that counsel had planned for trial preparation, the defense requires additional time to prepare. Importantly, this destruction issue caused by the government creates the need for the defense to attempt to re-interview witnesses, most of whom do not speak English and require coordination with an investigator and interpreter, about their text communications with Agent Tonozzi. This investigation is not something that can be accomplished quickly.

Given the demonstrated lack of completeness and reliability of Agent Tonozzi's reports, counsel would not provide effective assistance to Dr. Wu if she

did not attempt to re-interview all of the previously known and newly known witnesses. As such, Dr. Wu is requesting that the Court continue the trial of the Fraud Counts and related Falsification Counts. Dr. Wu proposes that the Court maintain the trial date of July 8, 2019 on the Distribution Counts and related Falsification Counts and reset the Fraud Counts and related Falsification Counts until after the Distribution Trial. Not only would this allow counsel time to adequately investigate the destruction issues and re-interview witnesses, but this order may help cure some of the prejudice to Dr. Wu. As previously indicated, all of the text messages with Fraud Count witnesses have been destroyed. So, Dr. Wu would not be able to engage in cross-examination of showing that the reports are incomplete and biased by comparing them to the text messages. Trying the Distribution Counts first where the defense can cross-examine Agent Tonozzi about the differences between his report writing and the text messages that exist may be able to be used in the Fraud Trial if counsel crafts her questions well.

In terms of setting an evidentiary hearing on this Motion, counsel is out of town March 26, 2019 through March 29, 2019.

Respectfully submitted,

 s/ Dru Nielsen
Dru Nielsen, #28775
Eytan Nielsen LLC
3200 Cherry Creek South Drive
Suite 720
Denver, CO  80209
(720) 440-8155
(720) 440-8156
dru@eytan-nielsen.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on Thursday, March 21, 2019, I electronically filed the foregoing **MOTION TO DISMISS FOR FAILURE TO PRESERVE EXCULPATORY EVIDENCE, OR IN THE ALTERNATIVE FOR APPROPRIATE SANCTIONS** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

s/ Heather Regan
Heather Regan