## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:18-cr-00293-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

   1.  JOHN VAN WU,

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the "Government"), by and through Bryan Fields, Assistant United States Attorney for the District of Colorado, and the Defendant, JOHN VAN WU, personally and by and through his counsel, Dru Nielsen, Esq, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCRR 11.1 and FED. R. CRIM. P. 11(c)(1)(A) and (B):

## I. AGREEMENT

A. Defendant's Obligations:

1.     The Defendant agrees to (1) plead guilty to Count 19 of the Superseding Indictment, charging a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C)(2), (2) waive his appeal rights, as detailed below, (3) the entry of an order of restitution in the amount of $94,829.38, and (4) to never again apply for a license to practice medicine in any jurisdiction.

1



COURT
EXHIBIT
1

2.    The defendant understands the penalties resulting from convictions for mail fraud and distributing oxycodone outside the usual course of medical practice. However, in exchange for the concessions in this agreement, the defendant agrees that any statutes of limitation, and any defenses arising therefrom, applicable to both mail fraud and the distribution of controlled substances outside the usual course of medical practice shall be tolled from the date on which this agreement is accepted by the Court for the rest of his life (hereinafter the "Tolling Period").   The defendant understands that applying for a medical license in another jurisdiction shall constitute a material breach of this agreement.   Upon such a breach, the defendant would not be entitled to withdraw his plea of guilty, but the government would not be bound by the other terms of this agreement and would be free to bring additional charges against the defendant related to the distribution of controlled substances outside the usual course of medical practice and additional executions of a mail fraud scheme.

3.    The defendant understands that by executing this agreement, he is giving up any defenses related to any applicable statutes of limitations as to any of the violations described above in paragraph 2 that might be brought against him for which any applicable statutes of limitation would have otherwise expired during the Tolling Period, that the Tolling Period will not be considered in determining whether charges are barred by any applicable statutes of limitation, and that any applicable statutes of limitation are accordingly tolled with respect to such charges during this period.   The defendant understands, acknowledges, and agrees that the period of time covered

2

under the Tolling Period will not be used in calculations determining whether any criminal proceedings against him are within any applicable statutes of limitation.

B. Government's Obligations

4.      In exchange for the defendant's concessions set forth in paragraph 1, the government agrees to (1) file no other federal criminal charges against the defendant based on matters currently known to the government or offenses based upon information provided by the defendant, except as provided above in paragraphs 2 and 3, (2) dismiss counts 1-18 and 20 – 34 of the Superseding Indictment without prejudice, pursuant to the exception described above in paragraphs 2 and 3, (3) not seek an upward variance from the applicable guideline range, (4) not seek consecutive sentences for any of the convictions, including the mail fraud and controlled substances convictions, and (5) recommend a three-level reduction for acceptance of responsibility for the drug-related conduct, pursuant to U.S.S.G. § 3E1.1, provided that the defendant does not do anything that is inconsistent with accepting responsibility between and including the date of his guilty plea and the date of sentencing.

C. Defendant's Waiver of Appeal

5.      The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.   Understanding this and in exchange for the concessions made by the Government in this agreement, the Defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence, including his conviction on Counts 36-51 of the Superseding

Indictment, unless it meets one of the following three criteria: (1) the sentence imposed
is above the maximum penalty provided in the statute of conviction, (2) the sentence
exceeds the advisory guideline range that applies to a total offense level of 23 (or 21, if
the "safety valve" described below applies); or (3) the government appeals the
sentence.   Except as provided above, the Defendant also knowingly and voluntarily
waives the right to appeal the manner in which the sentence is determined on grounds
set forth in 18 U.S.C. § 3742.

6.      The Defendant also knowingly and voluntarily waives his right to challenge
this prosecution, conviction, or sentence and/or the manner in which it was determined
in any collateral attack, including but not limited to a motion brought under 28 U.S.C.
§ 2255.   This waiver provision, however, will not prevent the Defendant from seeking
relief otherwise available if: (1) there is an explicitly retroactive change in the applicable
guidelines or sentencing statute, (2) there is a claim that the Defendant was denied the
effective assistance of counsel, or (3) there is a claim of prosecutorial misconduct.
Additionally, if the Government appeals the sentence imposed by the Court, the
Defendant is released from this waiver provision.

D.  Forfeiture of Assets

7.      The defendant agrees to forfeit to the United States immediately and
voluntarily any and all assets and property, or portions thereof, subject to forfeiture
pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), 21 U.S.S. § 853, and 28 U.S.C.
§ 2461(c), whether in the possession or control of the United States or in the

possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to (1) a money judgment in the amount of $94,829.38 constituting the proceeds obtained by the defendant from the mail fraud scheme and (2) the defendant's medical degree, which was used to facilitate both the distribution of controlled substances outside the usual course of medical practice and the mail fraud scheme the defendant was convicted of executing. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil and/or administrative forfeiture action.

8.     The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offenses to which the defendant is pleading guilty.   Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court find that the government has established the requisite nexus and enter a preliminary order of forfeiture.   The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee.

9.     The defendant agrees that the United States is not limited to forfeiture of the property described above.   If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred to sold to, or deposited with, a third party; has been placed beyond

5

the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United states shall be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above pursuant to 21 U.S.C. § 833(p) and Federal Rules of Criminal Procedure 32.2(e).   This Court shall retain jurisdiction to settle any disputes arising from application of this clause.   The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

10.     Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.   The United States Attorney's Office of the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of judicially forfeited assets be remitted or restored to eligible victims of the offense for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws.   The defendant understands that the United States Attorney's Office has authority only to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## II. ELEMENTS OF THE OFFENSE

11.     The parties agree that the elements of the offense to which this Plea Agreement is being tendered are as follows:

a.  The defendant knowingly or intentionally distributed a controlled substance, as charged;

b.  The controlled substance was in fact Oxycodone, a Schedule II Controlled Substance; and

c.  At the time of the distribution, the distribution of the controlled substance was not for a legitimate medical purpose or was outside the usual course of professional medical practice.

## III. **STATUTORY PENALTIES**

12.  The maximum statutory penalty for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) is not more than 20 years of imprisonment, a fine of not more than $1,000,000, or both a fine and imprisonment; not more than three years of supervised release; and a $100 special assessment fee.

13.  If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. **COLLATERAL CONSEQUENCES**

14.  The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.   The conviction may also have immigration consequences, such as causing the defendant to be deported or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. **STIPULATION OF FACTS**

7

15.     The parties agree that there is a factual basis for the guilty plea that the Defendant will tender pursuant to this Plea Agreement.   That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of this Plea Agreement.

16.     This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree as follows:

17.     The date on which relevant conduct began is in and about January 2011.

18.     The defendant, John Van Wu, was a medical doctor licensed, until July 16, 2016, to practice in the State of Colorado.   The defendant was registered with the Drug Enforcement Administration ("DEA") under the provisions of the Controlled Substances Act as a practitioner and personally possessed DEA registration number BW6329533 until September 14, 2015.   The defendant's DEA registration authorized him to write prescriptions for controlled substances on Schedules II through IV.

19.     The defendant Wu was the owner and operator of Advanced Health Care

8

One Center, P.C. and Health Care One, P.C.   Between 2011 and 2015 he used medical offices located at 2789 West Alameda Avenue in Denver, Colorado and 165 Carr Street, Unit 101N in Lakewood, Colorado.

20.     On or about March 16, 2016, the defendant produced a patient file for L.V.N. in response to a grand jury subpoena.

21.     On or about May 31, 2014, the defendant wrote a prescription for 60 oxycodone 30mg tablets to L.V.N.   A corresponding entry in the defendant's file for patient L.V.N. stated, among other things, that L.V.N. "complaint of back pain for 3 weeks after falling downstair at home.   He start having pain in his lower back and could not even get out of bed the next day . . . . He can barely stand and been moving around in his wheelchair.'"[1]

22.     Patient L.V.N. denies ever visiting Dr. Wu for medical treatment.   Patient L.V.N. further states that the event described in Dr. Wu's patient file on May 31, 2014 did not happen.   L.V.N. did not hurt himself falling down stairs, has never had chronic back pain and has never used or been confined to a wheelchair.   L.V.N. further denies ever receiving a prescription for oxycodone.

23.     Dr. Robert Brown, an expert in the field of pain management, reviewed the medical file for patient L.V.N.   He concluded that the prescription to patient L.V.N.. was outside the usual course of medical practice.   Dr. Brown observed that the defendant

---

[1] This quotation is pulled verbatim from the file; errors of grammar and usage have not been corrected.

failed to order imaging studies or refer to any prior imaging studies; failed to evaluate the etiology of L.V.N.'s reported pain; failed to consider alternatives to opioid treatment, such as physical therapy or other modalities of pain management; and failed to seek evaluations from other specialists.   Instead, the defendant's entire treatment plan was based on high-dose opiate analgesics that were not tapered even when the file reported improvements of pain and function level treatment.   Taken together, all of these factors support the conclusion that the defendant's prescription to L.V.N. was outside the usual course of medical practice.

24.     The parties stipulate and agree that relevant drug distribution conduct includes prescriptions written by the defendant to L.V.N.   As a result, the defendant distributed 462 oxycodone 30mg pills — 13.86 grams of oxycodone — outside the usual course of medical practice.

25.     On April 12, 2019, a jury found the defendant guilty of Counts 36-51 of the Superseding Indictment.   The defendant stipulates and agrees that as a result of the scheme related to those counts he was paid $94,829.38 to which he was not entitled.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

26.     The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553.   In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission.   In order to aid the Court in this regard, the parties set forth

below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines.   To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

### Advisory Guideline Computation:   Mail Fraud Counts

A.      The parties stipulate that the offense level that applies to the defendant's conviction on Counts 36-39 of the Superseding Indictment is 15 because (i) the base offense level for that offense is 7 pursuant to U.S.S.G. § 2B1.1(a), (ii) the losses of the scheme were greater than $40,000 but less than $95,000, which results in an 6-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(1)(D); (iii) the enhancements related to abuse of trust and obstruction, described below, would each result in a 2-level enhancement; and (iv) the convictions for each of these counts would group together pursuant to U.S.S.G. § 3D1.2.

### Advisory Guideline Computation:   Falsification Counts

B.      The parties further stipulate that the offense level that applies to the defendant's conviction on Counts 40-51 of the Superseding Indictment is 21 because (i) the base offense level is 14 pursuant to U.S.S.G. § 2J1.2(a), (ii) the offense resulted in substantial interference with the administration of justice, which results in a 3-level enhancement pursuant to U.S.S.G. § 2J1.2(b)(2), and (iii) the offense involved the destruction, alteration, and fabrication of a substantial number of records, involved the selection of essential and especially probative records to destroy or alter, and was otherwise extensive in its scope, planning and preparation, which results in a 2-level

enhancement pursuant to U.S.S.G. § 2J1.1(b)(3); (iv) the enhancement related to the use of a special skill described above would result in a 2-level enhancement pursuant to U.S.S.G. § 3B1.3, and (v) the convictions for each of these counts would group together pursuant to U.S.S.G. § 3D1.2.

### *Advisory Guideline Computation:   Combined Offense Level on All Counts*

C.      Pursuant to U.S.S.G § 2D1.1(c)(9), the base offense level is 22, because the relevant conduct involved 462 Oxycodone 30mg pills comprising 13.86 grams of oxycodone, or 92.8 kilograms of converted drug weight.

D.      Pursuant to U.S.S.G. § 2D1.1(b)(1), the defendant is entitled to a 2-level reduction if he meets the criteria set forth at § 5C1.1 (the "safety valve").   The parties stipulate that the defendant currently meets 4 of those 5 criteria:   he has one or fewer criminal history points, did not use violence or threats of violence, his conduct did not result in death or serious bodily injury, and he was not a leader of others engaged in criminal activity.   If the defendant truthfully provides to the government all information and evidence he has concerning the offense (participates in a "safety valve proffer"), then he would receive a 2-level reduction.

E.      Pursuant to U.S.S.G § 3B1.3, a 2 level enhancement applies because the defendant used his special skills as a doctor to facilitate the commission and concealment of the offense and because the defendant abused his positon of trust as a doctor.

F.      Pursuant to U.S.S.G. § 3C1.1, the defendant should receive a 2-level

12

enhancement related to the submission of falsified records in response to a grand jury subpoena.

G.      Pursuant to U.S.S.G. § 3D1.4(b), there is no grouping enhancement because (i) the conviction on Count 19 of the Superseding Indictment would not group with the convictions for Counts 36 – 51 of the Superseding Indictment, and (ii) the offense level for the convictions on Counts 36-39 — offense level 15 — is 9 or more levels less serious than the conviction for Count 19 — offense level 26 — which results in only 1 unit of prosecution and no enhancement.

H.      The Adjusted Combined Offense Level is therefore **26**.   If the defendant participates in a safety valve proffer, the Adjusted Combined Offense Level would be **24**.

I.      <u>Acceptance of Responsibility</u>:   Provided the defendant does nothing inconsistent with acceptance of responsibility between the date of the change of plea hearing and the date of the sentencing hearing, the defendant should receive a 3-level downward adjustment, pursuant to U.S.S.G §§ 3E.1.1(a) & (b) for accepting responsibility for conduct related to the distribution of controlled substances.   The resulting Offense Level would be **23**.   If the defendant participates in a safety valve proffer, the resulting offense level would be **21**.

J.      <u>Criminal History Category</u>: The parties understand that the defendant's criminal history computation is tentative.   The criminal history category is determined by the Court based on the defendant's prior convictions.   Based on information

currently available to the parties, it is estimated that the defendant's criminal history category would be **Category I,** as the defendant has no criminal history.

K.      Assuming the (tentative) criminal history set forth above, the career offender/criminal livelihood/armed career criminal adjustments pursuant to U.S.S.G. § 4B1.1 - § 4B1.4 would not apply.

L.      Imprisonment:   If the safety valve does not apply and the offense level is 23, the advisory guideline range resulting from these calculations is 46-57 months; if the safety valve does apply and the offense level is 21, the advisory guideline range resulting from these calculations is 37-46 months.   However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level of 21 set forth above could conceivably result in a range from 37 months (bottom of Category I), to 125 months (top of Category VI at the level 24 offense level that would be calculated with no safety valve reduction and in the event the defendant's conduct is inconsistent with acceptance and does not receive the extra point under § 3E1.1(b)).

M.      Fine: Pursuant to U.S.S.G. § 5E1.2, assuming the estimated offense level of 23 set forth above, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties.   If the offense level is 21, the fine range for the offense would be $15,000 to $150,000, plus applicable interest and penalties.

N.      Supervised Release: Pursuant to U.S.S.G. § 5D1.2 and 21 U.S.C. § 841(b)(1)(C), if the Court imposes a term of supervised release that term must be at

least 3 years.

O.    Restitution: The parties agree that, pursuant to U.S.S.G. § 5E1.1, the defendant is for restitution in an amount up to $94,829.38, and agrees to pay restitution in an amount as calculated and ordered by the Court.

27.    The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range.   In doing so, the Court is not bound by the position of any party.

28.    No estimate by the parties regarding the guideline range precludes the defendant from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes the defendant from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

29.    The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including

imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. **ENTIRE AGREEMENT**

30.     This Plea Agreement states the parties' entire agreement.    There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.    In entering this Plea Agreement, neither the Government nor the Defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: ___6 - 25 -19___          _____
John Van Wu
Defendant

Date: ___6 - 25 -19___          _____
Dru Nielsen, Esq.
Attorney for Defendant

Date: ___6/25/19___          _____
Bryan David Fields
Assistant United States Attorney

16