**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  1:18-cr-293-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN WU,

    Defendant.

---

**RENEWED MOTION FOR COMPASSIONATE RELEASE**

---

Dr. John Wu, by and through undersigned counsel, and pursuant to 18 U.S.C. 3582(c)(1)(A), submits this renewed Motion for Compassionate Release addressing the Court's issues regarding his initial Motion for Compassionate Release (Doc. No. 173 And Doc. No. 174).  Dr. Wu has exhausted his administrative remedies and seeks that this Court find extraordinary and compelling reasons for a compassionate reduction by reducing his carceral sentence to time served and ordering him to serve the time remaining on his carceral sentence on home confinement, as a condition of his supervised release.  As grounds, Dr. Wu submits the attached affidavit (Exhibit A) for the facts in support of this Motion and asserts the following:

Dr. Wu is currently serving a 51-month sentence.  His current anticipated release date according to the BOP inmate locator is November 23, 2022.  Therefore, as of the date of this filing, Dr. Wu has approximately 28 months remaining on the prison portion of his sentence.  Dr. Wu was sentenced to three years of supervised release.

**(1)    Court's Authority to Reduce the Term of Imprisonment Due to Dr. Wu's Medical Issues and Increased Risk Which Constitute Extraordinary and Compelling Reasons**

A defendant may avail himself to seek a compassionate release from the Court "after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility" 18 U.S.C. 3582(c)(1)(A). As detailed in Section 2, Dr. Wu has met the exhaustion requirement. As such, this Court may reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The United States Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). The policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community" and (iii) "the reduction is consistent with the policy statements issued by the Sentencing Commission." § 3582(C)(1)(A)(i).

The Department of Justice is taking the position that inmates who suffer from a condition identified by the CDC as putting them at higher risk for severe illness from COVID-19 and who are not expected to recover from that condition present an "extraordinary and compelling reason" to be considered for compassionate release under U.S.S.G. § 1B1.13 cmt. N. 1(A)(ii)(I). See, e.g., Government's Response, *United States v. Feucht*, 0:11-cr-60025, ECF 51 (S.D. Fla. May, 26, 2020) ("The Government acknowledges that during the current COVID-19 pandemic, an inmate who presents one of the CDC risk factors, which include diabetes, as confirmed by medical records, and

who is not expected to recover from that condition, presents an extraordinary and compelling reason that would allow compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release."); Government's Response to Defendant's Motion for Compassionate Release, *United States v. Moralez*, 1:13-cr-00073-SWS, ECF 50 (D. Wyo. May 27, 2020) ("The Department of Justice takes the position that the mere existence of COVID-19 is not sufficient to qualify an inmate for compassionate release. However, if an inmate has a chronic health condition that makes him particularly vulnerable to serious illness from COVID-19, as determined by the CDC, then the Department would deem he has satisfied the pertinent criteria in Application Note 1(A)(ii)(I)."  In *United States v. Erwin,* the government conceded that the defendant "satisfies the threshold requirement" as a result of his diabetes.  *Erwin,* 15-cr-383-RBJ, ECF 325, p. 9.

District Courts all around the country, including in the District of Colorado, most recently in *United States v. Perry*, No. 18-cr-480-PAB (D. Colo. July 20, 2020), ECF No. 76, have concluded that "extraordinary and compelling reasons" exist where an inmate is suffering from underlying medical conditions that, according to the CDC, put them at higher risk for severe illness and death from COVID-19. See, e.g., *United States v. Jenkins,* No. 99-cr-00439-JLK, 2020 WL 2466911 (D. Colo. May 8, 2020); *United States v. Rainault*, No. 18-cr-00237-CMA (D. Colo. June 2, 2020), ECF No. 52; *United States v. DeWilliams*, No. 99-cr-00120-REB (D. Colo. June 10, 2020), ECF No. 560.

As indicated in the initial Motion for Compassionate Release and Exhibits, Dr. Wu has been diagnosed with Type 2 Diabetes.  See PSIR, Doc. No. 126, page 22, paragraph 111.  This is a medical condition that the CDC has identified as putting a person at higher risk for severe illness.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions. While Dr. Wu is not currently taking medication, the CDC guidelines do not distinguish between diabetics who currently take medication and those who do not. Additionally, as detailed in the initial Motion for Compassionate Release and Exhibits and in Dr. Wu's attached Affidavit, Dr. Wu suffers from asthma and hypertension, which according to the CDC, also contribute to an increased risk of severe COVID-19 illness or death.

Since the government did not respond to Dr. Wu's initial Motion for Compassionate Release detailing his medical conditions, the defense requests that the Court accept the representations made in his initial Motion. Dr. Wu maintains that his medical situation presents an "extraordinary and compelling reason" to be considered for compassionate release, even according to the Department of Justice, and the Court should then conduct a § 3553 analysis, as he detailed in the initial Motion.

In his initial Motion for Compassionate Release, Dr. Wu was not clear as to the relief he was seeking. In this renewed Motion for Compassionate Release, Dr. Wu requests that his sentence term be modified from 51 months prison to 23 months prison or time served, and that the Court add a condition of his supervised release to include 28 months (the currently remaining length of carceral sentence) of home confinement. While the court may not direct the Bureau of Prisons to place a prisoner in a particular institution, this logic does not apply where a court determines that a sentence reduction is appropriate based on § 3582(c)(1)(A), which is akin to the Court "determining the length and type of sentence." This is supported by the text of the compassionate release statute, which contemplates the sentencing court "impos[ing] a term of probation or supervised release with or

4

without conditions that does not exceed the unserved portion of the original term of imprisonment." *See* 18 U.S.C. § 3582(c)(1)(A).

Thus, there is statutory authorization for a court, on a motion for compassionate release, to sentence a defendant to a period of supervised release with a condition of home confinement. *See* Order granting compassionate release, *United States of America v. Lyle Perry*, 18-cr-480-PAB, ECF No. 76. In the *Perry* Order granting compassionate release, Chief Judge Brimmer indicates that *United States v. Lopez* is instructive that § 3582(c)(1)(A) allows the Court to, if it grants a motion for a sentence reduction, "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." *Lopez,* 2020 WL 2489746 (D.N.M. May 14, 2020)(concluding that 62-year-old defendant with high blood pressure and type II diabetes had shown "extraordinary and compelling reasons" warranting compassionate release).

### 2)   Dr. Wu Has Exhausted his Administrative Remedies

Dr. Wu has exhausted his administrative remedies both due to a failure of the BOP to bring a motion on his behalf and the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.  First, Dr. Wu asserts that there was lapse of 30 days in receiving a response from the warden on his request for compassionate release.

On April 2, 2020, Dr. Wu sent a handwritten letter to the warden seeking compassionate release and transfer to home confinement due to my existing medical illnesses and high risk of mortality upon contracting COVID-19 (Exhibit B).  While this request was not on a BOP form, the government in *United States v. Erwin* indicated that "no specific form is required" and the inmate "can use any piece of paper to make this request." *Erwin,* 15-cr-383-RBJ, Doc. No. 325, p. 2.

While other inmates were getting responses back, Dr. Wu, having not received a response, on April 10, 2020, Dr. Wu sent a follow-up to the warden on the BOP "Inmate Request to Staff" form seeking compassionate release. Exhibit C. Dr. Wu did not receive a response from the warden within 30 days of the receipt of Dr. Wu's initial handwritten request on April 2, 2020, nor his April 10, 2020 "Inmate Request to Staff." On May 3, 2020, receiving no answer after the 30 days had passed, Dr. Wu sent another typed request to the warden requesting compassionate release. Exhibit D. If Dr. Wu knew at that time that he had been denied by the warden, he would have sent an appeal, not another request to the warden.

It was only after AUSA Fields requested records from BOP, provided those to undersigned counsel, and informed undersigned counsel on May 19, 2020 that Dr. Wu's request for compassionate release had been denied, that Dr. Wu was informed of the warden's denial of his request for compassionate release. Dr. Wu received the attached "Memorandum for Regional Administrative Remedy Coordinator" from BOP which verifies that Dr. Wu was not notified of the denial in a timely fashion. Exhibit E. BOP attributes the delay to a "clerical error." *Id.* According to the records, the warden denied Dr. Wu's request for compassionate release on April 29, 2020 (Exhibit F), although as confessed by the BOP, Dr. Wu did not receive the actual denial letter, due to the clerical error, until undersigned counsel was made aware of the denial and Dr. Wu asked a counselor at the facility on May 21, 2020. As there was an admitted lapse of 30 days from the receipt of Dr. Wu's request by the warden and notifying, Dr. Wu, Dr. Wu asserts that he has satisfied the exhaustion requirement since 30 days lapsed between his request for compassionate release and receiving a response from the warden.

Dr. Wu also fully exhausted his administrative remedies. Had Dr. Wu received the denial within the 30 days, he would have immediately appealed the decision. This is evidenced by his immediate appeal on May 21, 2020 after learning of and being provided by a counselor the warden's denial of his request for compassionate release. The BOP's clerical error directly caused a delay in Dr. Wu's ability to make a timely appeal. Still on May 21, 2020, Dr. Wu submitted a "Request for Administrative Remedy" appealing the denial of his compassionate release.

On June 4, 2020, Dr. Wu received a response from the Warden "BG" (Warden B. Greilick) denying his appeal. Exhibit G. On June 4, 2020, Dr. Wu filed a final remedy appeal to the Regional Director of the Federal Bureau of Prisons. As of the date of this filing, the appeal to the Regional Director was submitted approximately 50 days ago and Dr. Wu has not received a response. According to the BOP January 6, 2014 Administrative Remedy Program Statement §542.18, once a request for appeal is filed, the Regional Director has 30 days to respond. Since no response has been received by Dr. Wu from the Regional Director within 30 days, Dr. Wu contends that he has has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on his behalf.

The policy reasons behind the First Step Act's amendments to the compassionate release act are apparent from the subsection titled: "Increasing the Transparency and *Use* of Compassionate Release." First Step Act, Pub. L. 115-391, 132 Stat 5194, 5239. Before the First Step Act, compassionate release depended solely on BOP—which was "so plagued by delay that prisoners sometimes died while waiting for the BOP to make a decision." *United States v. Jeremy Rodriguez*, No 2:03-CR-00271-AB-1, 2020 WL 1627331, at *5 (E.D. Pa. Apr. 1, 2020). The First Step Act was intended to "expand[] compassionate release" and "expedite[] compassionate release applications."

164 Cong. Rec. S7314-02, 2018 WL 6350790 (Dec. 5, 2018) (statement of co-sponsor Senator Cardin). Dr. Wu has been aggressively pursuing compassionate release from BOP since April 2, 2020. Certainly, 101 days of trying to get relief from BOP and in the spirit and purpose of the amended First Step Act, Dr. Wu has exhausted all administrative remedies.

### 3) FCI's Failure to Protect Inmates from COVID-19

Dr. Wu asserts in his initial Motion and in the attached affidavit that the BOP and the facility where he is located, the camp at FCI Englewood, is failing to protect him and other inmates from COVID-19. Given Dr. Wu's increased risk of serious COVID-19 complications, this failure is unacceptable and puts his life and future in danger.

The Englewood facility where Dr. Wu is incarcerated has two components, the FCI and the FPC. The Englewood facility reports a total inmate population of 1,023 inmates. Dr. Wu is housed at the low-security camp located on the same grounds. There are approximately 100 inmates at the low-security camp. As staff members routinely work in both components of the prison and the camp, the personnel can easily spread COVID-19 from one component to the other.

Dr. Wu's attached affidavit describes the conditions at FCI that demonstrate the facility's failure and inability to implement protective measures. Without repeating the affidavit, of particular note are that when in his cell and/or sleeping, Dr. Wu is unable to be 6 feet apart from other inmates, inmates do not sleep with masks, during meal lineup inmates are bunched together with no social distancing, the facility is not utilizing plexiglass shields between staff and inmates during meal and medicine distribution, and the facility does not provide soap without charge or any hand-sanitizer to inmates.

According to the BOP website, at FCI Englewood there are currently 3 inmates who have currently tested positive and 4 inmates and 1 staff who have tested positive and recovered. Of course, those are the numbers that are reported. While there is nothing he can do to verify, Dr. Wu believes, based on statements made by staff and inmates, that there are currently approximately 25 inmates under quarantine. Additionally, FCIs count is likely inaccurate as the facility is not engaging in facility-wide testing. As the Court is undoubtedly aware, individuals may be infected with COVID-19 and be asymptomatic. So, while the numbers at FCI Englewood are lower than at other facilities, this does not mean that the numbers are accurate.

As far as education and information to inmates and staff itself, FCI Englewood held a single meeting back in April 2, 2020 when very little was known about the virus. The meeting took place at the Camp meeting room where BOP informed inmates what will happen if an inmate contracts COVID 19. The information given was that if an inmate contracts COVID, he would be quarantined in a different room. This procedure does nothing to address the fact that the building shares recycled air vent and central HVAC. The information presented lacked information on how to reduce the spread and instead focused on what treatments inmates would receive. There is a disincentive for inmates to report symptoms as they will be isolated from other inmates. And, the facility is failing to implement universal testing.

Dr. Wu describes inadequate medical care provided at Englewood in his affidavit and in Exhibits H and I attached to the initial Motion (Doc. No. 173). Dr. Wu, who holds a medical degree, is able to identify and express his medical concerns. Still, Dr. Wu has not received timely or adequate medical care. Based on his experience and what he has described in the Affidavit of the

experiences of other inmates, Dr. Wu's concerns about the understaffed medical providers to be able to render timely and effective treatment in the even he contracts COVID-19 are justified.

FCI Englewood is not unique in its inability to protect inmates from the spread of COVID-19 and is largely a function of the prison environment. Researchers from Johns Hopkins University and the University of California Los Angeles' COVID-19 Behind Bars Data Project examined prison data from all states, the District of Columbia, and the Federal Bureau of Prisons from publicly available data sources such as medical examiner reports, corrections department websites, media reports, and news releases. COVD-19 cases in US federal and state prisons were 5.5 times higher – and death rates 3 times higher – than in the general population from March 31 to June 6, 2020. https://law.ucla.edu/academics/centers/criminal-justice-program/ucla-covid-19-behind-bars-data-project. The authors noted that the true prevalence of coronavirus in prisons is likely higher than that measured in the study because some prisons are likely higher than that measured in the study because prisons are not reporting cases, and others are not testing prisoners at all. According to the BOP website, as of the date of this filing, there are currently 4,353 federal prisoners and 397 BOP staff that have active COVID-19 cases  - a record high. To date, a total of 99 federal inmates and one BOP staff member have died from COVID-19. https://www.bop.gov/coronavirus/.

In this case, the Court must balance the need for just punishment in this case against the risk that COVID-19 poses to Dr. Wu's health, given his underlying medical conditions have been identified by the CDC as putting Dr. Wu at higher risk for severe illness and death from COVID-19. The medical care at the prison where Dr. Wu is housed is inadequate and the facility itself has not implemented necessary procedures to protect against this easily spread dangerous virus.

Ordering Dr. Wu to serve the 28 months remaining on his carceral sentence in home detention is appropriate in this case in light of the sentencing factors discussed in Dr. Wu's initial Motion.

Respectfully submitted this 24th day of July, 2020.

*s/ Dru Nielsen*
Dru Nielsen
dru@eytan-nielsen.com
EYTAN NIELSEN LLC
3200 Cherry Creek South Drive, Suite 720
Denver, CO 80209
Phone: (720) 440-8155
Fax: (720) 440-8156
COUNSEL FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on Friday, July 24, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

*s/ Dru Nielsen*