**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 18-cr-00293-RBJ-1

UNITED STATES OF AMERICA

v.

JOHN VAN WU

       Defendant

---

## DECLARATION OF STACY COLLINS

---

I, Stacy Collins, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above entitled matter.   All records attached to this declaration are true and accurate copies of Bureau records maintained in the ordinary course of business.

     1.     I am the Associate Warden overseeing Operations at the Federal Bureau of Prisons ("Bureau") Federal Correctional Institution ("FCI") in Littleton, Colorado, known as FCI Englewood.   I have been employed in this capacity since April 2019. Since March 2001, I have been employed by the Bureau in positions of increasing responsibility.   In my role as Associate Warden at FCI Englewood, I provide guidance, support, and direction to the Health Services, Financial Management, Trust Fund, Safety, and Facilities departments to ensure overall compliance with Bureau policies, procedures and federal law.

2.      As part of my official job duties, I have access to records maintained in the ordinary course of business by the Bureau, including records concerning the operation of FCI Englewood, information maintained in the SENTRY[1] database, the Bureau Electronic Medical Record ("BEMR") database, and inmate central files.

3.      With respect to COVID-19 specifically, I am involved on a daily basis in the identification, planning, and implementation of all Bureau directives for preventing the spread of COVID-19 at FCI Englewood.   Through the course of my official duties, I have personal knowledge regarding the numerous measures, discussed in turn below, that have been implemented both Bureau-wide and at FCI Englewood in order to contain, mitigate, and manage the spread of COVID-19.

4.      The statements I make hereinafter are made based on my review of the official files and records of the Bureau, my own personal knowledge, or based on information acquired by me through the performance of my official duties.

I.      **NATIONAL STEPS TAKEN BY THE BUREAU TO ADDRESS COVID-19[2]**

5.      In response to the pandemic, the Bureau has taken significant measures to protect the health of inmates in its charge.   These steps include, but are not limited to the following:

---

1 SENTRY is the Bureau's national database, which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, program participation, administrative remedies, and discipline history.
2 The Bureau's national guidance has undergone a number of changes in response to the evolving threat. The Bureau has established a COVID-19 resource section on its public webpage, which is available at: https://www.bop.gov/coronavirus/.   This webpage includes updates on the Bureau's response to COVID-19 and positive COVID-19 tests among inmates and staff at Bureau institutions nationwide.

a.      Beginning August 5, 2020, the Bureau implemented Phase Nine of the Nationwide Action Plan, which includes an extension of previously disseminated guidance and currently governs operations.   The current modified operations plan allows for limited group gathering with extra attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Additionally with Phase Nine, Evidence-Based Recidivism Reduction Programs and Productive Activities will resume with social distancing modifications.

b.      All staff and inmates have been and will continue to be issued appropriate face coverings, and are required to wear the face covering when in public areas when social distancing cannot be achieved.

c.      Every newly admitted inmate is screened for COVID-19 and tested by Quest commercial lab for COVID-19.   Asymptomatic inmates are placed in quarantine status for fourteen days with twice-daily temperature checks and twice-daily screening of signs and symptoms.   Symptomatic inmates are placed in isolation until they test negative for COVID-19 as directed by CDC guidelines. Additionally, all staff are screened for signs and symptoms prior to entering the institution.   Any staff member registering a temperature of 100.4 degrees Fahrenheit or higher are not permitted beyond the screening site.

d.      Contractor access to Bureau facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems.   All volunteer visits have been suspended, unless authorized by the Deputy Director of the Bureau of

3

Prisons.   Any contractor or volunteer who requires access are screened for symptoms and risk factors.

      **e.**    Social visits were stopped on March 13, 2020, and remain suspended to limit the number of people entering the facility and interacting with inmates.   In order to ensure familial relationships are maintained throughout this disruption, the Bureau of Prisons has increased inmate telephone allowance to 500 minutes per month.   Tours of facilities are also suspended.   Legal visits may be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors. Video legal visits are utilized when possible.

      **f.**    In addition to the Bureau's official Action Plans, on March 11, 2020, the Bureau activated its "Incident Command System," commonly referred to as a Command Center, at Central Office in Washington, D.C., in response to the COVID-19 pandemic.   The Incident Command System is a standardized, all-hazard incident management tool.   The Bureau has used the Incident Command System in the past to address other disruptive events, such as fires, human and animal disease outbreaks, and hazardous materials incidents.

      **g.**    By means of the Incident Command System, the Bureau works to mitigate the health and safety risks of COVID-19 by providing accurate information to all Bureau institutions, holding Bureau institutions accountable for abiding by Bureau directives and guidance, and coordinating the Bureau's national response.

   **h.**      Further details and updates pertaining to the Bureau of Prison's

modified operations are available to the public on the Bureau website on a regularly

updated resource page.[3].

## II.     Steps Taken at FCI Englewood to Address COVID-19

   6.      In addition to the steps taken at the national level, FCI Englewood itself

has also taken a number of additional measures in response to the COVID-19

pandemic.

## III.     FCI Englewood Command Center

   7.      On March 13, 2020, FCI Englewood activated its local Command Center.

The local Command Center, in conjunction with the National Command Center,

monitors, plans, and implements national directives and other procedures at FCI

Englewood.

   8.      In addition to the special rules limiting inmate movement discussed above,

FCI Englewood has taken many other steps to prevent the introduction and spread of

COVID-19.   Those steps include providing inmate and staff education, conducting

inmate and staff screening, implementing testing, quarantine, and isolation procedures,

and ordering enhanced cleaning, testing, and medical supplies, among other

preventative measures.

## IV.     Inmate and Staff Education relating to COVID-19

   9.      From the outset of the COVID-19 pandemic, FCI Englewood officials have

provided regular updates to inmates and staff regarding the virus and the Bureau's

---

[3] : www.Bureau.gov/coronavirus/index.jsp

response to the situation.   The officials have educated inmates and staff regarding measures that they themselves should take to stay healthy.

10.     The Executive Staff—including the Warden, Associate Warden, and Captain—conduct town hall meetings, weekly rounds and/or disseminate inmate bulletins.   During these times, inmates receive instruction about all aspects of COVID-19, including how to identify symptoms, how to prevent the virus from spreading (including through good personal hygiene), and the need to immediately report symptoms to medical providers. Informational handouts are posted in locations throughout FCI Englewood, including in inmate housing units and in places where they can be easily seen by institution staff.   *See Att. 1, CDC COVID-19 Stop the Spread of Germs Factsheet.*   Inmates also receive this information by means of information bulletins posted on TRULINCS, in both English and Spanish.

11.     FCI Englewood staff have also been educated about how to prevent the introduction and spread of COVID-19, including the importance of frequent hand washing, not touching their face, maintaining appropriate social distancing, and cleaning and disinfecting all equipment, including their uniforms. Additional hand sanitizer stations have been placed for their use.

**V.      Screening for COVID-19 at FCI Englewood**

12.     The following screening measures for both inmates and staff are currently in place and will remain in effect even after the stay-in-shelter order is lifted, until Bureau officials have made a determination that COVID-19 no longer poses a threat.

## VI.    Inmates

13.    FCI Englewood began screening incoming inmates for COVID-19 on March 19, 2020.   All newly arriving inmates to FCI Englewood are screened immediately upon their arrival.   All inmates are medically screened by the Health Services Department.   The medical providers conduct an initial screening in a designated area at FCI Englewood separate from other staff and inmates.   The medical providers wear personal protective equipment, or "PPE," during the screening process.   All inmates designated and arriving to FCI/FPC/FDC Englewood are tested for COVID 19, and placed in quarantine for 14 days.   Around the 14th day, the inmates are retested, and are not released from quarantine until the results of the second test is received.

14.    The inmate is evaluated for symptoms of COVID-19 (including fever, cough, and shortness of breath), as well as for "exposure risk factors," including whether the inmate has traveled from, or through, any locations identified by the CDC as increasing epidemiologic risk within the past 14 days, or has had close contact with anyone diagnosed with COVID-19 in the past 14 days.

15.    Following this initial screening, the inmate is escorted to the unit in the prison that has been designated as the isolation/quarantine unit, where all inmates and staff are required to wear a surgical mask and all medical staff members must wear PPE.

16.    If the inmate does not have symptoms or risk factors, he is tested for COVID-19, and quarantined for 14 days.   During this period, he is checked twice daily for signs, symptoms, and temperature, to ensure he does not develop any symptoms

7

consistent with COVID-19.   If the inmate does have symptoms or risk factors, or if he has a pending COVID-19 test, he will be placed in an isolation cell.   In all areas of the quarantine/isolation unit, all staff must wear PPE and all inmates must wear a surgical mask.   Inmates on quarantine and isolation status are not celled together.   Their cells are in the same physical plant, though the air handlers have been adjusted to reduce the risk of air transfer between adjacent cells.

17.     After the expiration of 14 days, and upon medical clearance, inmates are released into the general population.

18.     This process ensures inmates are screened in a controlled environment, so the rest of the inmate population is not exposed to a newly arrived inmate until he has been properly screened and cleared by Health Services Department medical providers.

19.     FCI Englewood has also taken steps to screen its current resident inmate population.

20.     The Health Services Department follows current CDC guidance in caring for individuals at FCI Englewood who are considered "high risk." These guidelines can be found at:

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-ris k.html.

Per CDC guidance, "high-risk" individuals include those over 65 and those with significant underlying medical conditions, such as chronic lung disease, moderate to severe asthma, liver disease, and diabetes.   *Id.*

8

21.     FCI Englewood is also conducting enhanced screening for all inmates with ongoing work details, such as food service and cleaning orderlies, deemed essential functions.   Each inmate orderly is screened for illness before and after each assigned work detail, including screening for symptoms and having their temperature taken.   As a further precaution, most cleaning orderlies are assigned only to the units in which they reside, thus limiting their contact with inmates in other housing units.

22.     All inmates are encouraged to self-monitor and to report symptoms of illness to FCI Englewood staff.   Inmates have multiple opportunities, every day, to speak with medical providers.   The Health Services Department is staffed with a full complement of medical providers who go to each housing unit at least twice every day to conduct sick call and pill line.   In addition, unit staff and other department representatives (including staff from education, commissary, psychology, and recreation) are required to conduct regular rounds in each housing unit to ensure the inmate population remains safe and healthy.   An inmate can speak with any of these staff members, or bring concerns to staff's attention by means of a written request, or "cop-out".

23.     FCI Englewood Health Service's medical providers are prioritizing immediate medical care for anyone who claims symptoms indicative of a COVID-19 infection.   An inmate with symptoms consistent with COVID-19 will be evaluated by a medical provider in the Health Services Department.   Based upon that evaluation, a determination will be made as to whether isolation and/or testing is appropriate.   If an inmate is deemed appropriate for isolation, the inmates in his housing will be

9

quarantined for a period of the sooner of 14 days or pending results of a COVID-19 test.

24.     An inmate may also be placed in quarantine or isolation if he is exposed to a person with COVID-19, where he will be tested and monitored daily for a period of at least 14 days.   Quarantine or isolation will only be discontinued upon receiving negative results from the second COVID-19 test around the 14th day of isolation or quarantine and contingent upon the inmate not developing new symptoms.

25.     If there is a positive inmate case of COVID-19 at FCI Englewood that inmate will be placed in an isolation cell and be screened daily by Health Services for symptoms and appropriate care.

26.     All inmates have access to sinks, water, and soap at all times.   Newly arriving, and currently housed inmates at the FCI/FDC/FPC Englewood automatically receive soap, and all inmates may receive new soap weekly.   For inmates without sufficient funds to purchase soap in the commissary, soap and other hygiene items are provided at no cost to the inmate.   FCI Englewood inmates' clothing and linens are sent to be washed twice weekly.

27.     All common areas in inmate housing units are cleaned at least once daily, and are typically cleaned by inmate orderlies multiple times throughout the day, with a designated disinfectant known to kill human coronavirus.   FCI Englewood has made this disinfectant available to all inmates so that they may clean their own living areas on a regular basis.   Common areas outside inmate living areas, including the FCI Englewood lobby, bathrooms, cafeteria, etc., are also cleaned with the same disinfectant on a daily basis, and often multiple times per day.

28.     Each housing unit has been stocked with cleaning supplies for use by inmate orderlies and other inmates to clean both the common areas and their individual housing areas on a daily basis.

## VII.   STAFF AND VISITORS

29.     Since March 19, 2020, all individuals entering FCI Englewood (including staff, delivery drivers, or any other visitors) are directed to a single point of entry. Every person entering the institution must undergo a health screening. The screening consists of a questionnaire to evaluate their risk of exposure, as well as to determine whether they have been experiencing any symptoms of illness, in addition to having their temperature taken.

30.     The persons conducting this health screening are authorized to deny entry to any individual if he or she has a body temperature of 100.4 degrees Fahrenheit or above, or reports other symptoms consistent with COVID-19.

31.     This screening applies to all staff and visitors, including those who leave the grounds of FCI Englewood even for a short duration of time, such as a lunch break.

32.     FCI Englewood employees have also been educated on the importance of staying home if they are feeling ill, and are required to self-report any COVID-19 exposure (known or suspected) as well as any positive COVID-19 test.   If a staff member is tested for COVID-19, they are not permitted to return to work until they have received negative test results.

33.     FCI Englewood has limited the number of in-person, onsite staff meetings. If such meetings take place, they are limited to 10 people and must be conducted in areas that allow individuals to maintain an appropriate distance from one another.

34.     Correctional staff are required to disinfect all common equipment, such as keys and radios, upon obtaining these items from the supply room and again upon their return.   Staff also have regular, consistent access to soap and hand sanitizer.

35.     Correctional staff are provided with protective equipment to be used in appropriate locations throughout FCI Englewood such as quarantined areas, isolation units, and screening sites.   FCI Englewood has sufficient PPE on hand, including N-95 respirator masks, surgical masks, and rubber gloves, to meet its current and anticipated needs.   It has the ability to order additional PPE should the need arise.

36.     On April 6, 2020, all inmates and staff were provided protective face coverings, which are replaced as needed.   New face coverings are provided to inmates releasing to the community.

37.     The measures described above have been effective in maintaining the safety of inmates and staff at FCI Englewood.

**VIII.    COVID-19 Testing at FCI Englewood**

38.     At FCI Englewood, the decision whether to test an inmate for COVID-19 is made by Bureau medical providers based on a number of criteria, including but not limited to: (1) the nature and severity of the symptoms; (2) the inmate's potential exposure to COVID-19; and (3) whether the inmate is considered "high-risk."

39.     As of today's date, no inmates at either the FCI or FPC Englewood have tested positive for COVID-19.

40.     One FCI Englewood staff member did test positive and has recovered from the virus.   All inmates identified as having close contact with that staff member were isolated, tested and subsequently found to be negative for the virus.

12

**IX.    Federal Inmate John Van Wu**

41.    Inmate John Van Wu, Register Number 44803-013, is incarcerated at the
Federal Prison Camp, FCI Englewood in Littleton, Colorado.   *See* Att. 2, SENTRY
Public Information Inmate Data at 1.   Inmate Wu's current projected release date is
November 23, 2022, via good conduct time release.   *Id.* Inmate Wu has served
approximately 35.8 percent of his sentence with good conduct time earned and 30.5
percent of his full term.   *Id.* at 3.

42.    Inmate Wu arrived at FPC Englewood on October 22, 2019. Upon arrival
he was medically screened by the Health Service Department.





46.     Inmate Wu filed a request for Compassionate Release/Reduction in Sentence or Home Confinement under pre-CARES Act standards with the FCI Englewood Warden on April 13, 2020.   *See* Att. 4, Electronic Inmate Request to Staff and Response at 1-2.

47.     On April 29, 2020 the Warden denied his request.   *Id* at 3.   In the Warden's response, inmate Wu was advised he may appeal the Warden's decision through the Bureau's Administrative Remedy Program.   *Id.*

**X.      The Bureau's Authority to Place inmates on Home Confinement**

48.     The Bureau's statutory authority to transfer prisoners to home confinement rests in 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541.   The Bureau's policy and procedures regarding home confinement are outlined in Program Statement 7320.01, *Home Confinement*, and Bureau Operations Memorandum, *Home*

*Confinement under the First Step Act*, both of which are available on www.bop.gov via the Resources tab.   Both statutes set forth certain limitations with respect to the Bureau's transfer authority.   *See* 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541.   The Attorney General's directives in light of the COVID-19 pandemic, dated March 26, 2020, and April 3, 2020, *infra,* and given the surge in positive cases at select sites, the Bureau began immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC to determine which inmates are suitable for home confinement.   Since the release of the Attorney General's original memorandum dated March 26, 2020, the BOP is prioritizing transfers to home confinement of all suitable inmates as an appropriate response to the COVID-19 pandemic.

49.   The CARES Act authorized the Attorney General to expand the group of inmates who can be considered for home confinement upon a finding that emergency conditions are materially affecting the function of the Bureau.   On April 3, 2020, the Attorney General made that finding and authorized the Director of the Bureau to immediately maximize transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly situated BOP facilities where COVID-19 is materially affecting operations.

50.   The Bureau's Central Office has promulgated criteria for determining whether, in light of the CARES Act and the Attorney General's directives, an inmate is eligible for home confinement.   To be eligible, the inmate must have: (1) a primary offense that is not violent, not a sex offense, and not a terrorism offense; (2) no detainer; (3) a mental health care level less than 4; (4) a PATTERN risk score of minimum; (5) a BRAVO, or custody classification, score of low or minimum; and (6) had

no incident reports in the past twelve months.   A "PATTERN" score evaluates the inmate's risk of recidivism.

51.   Based on these criteria, 30 inmates at FCI Englewood were identified by the Bureau's Central and Regional Offices as potentially eligible for home confinement.

52.   Inmate Wu was not on the list because he has not served 50 percent of his sentence.   *See Att. 2, SENTRY Public Information Inmate Data at 3.*

## XI.   Bureau Administrative Remedy Program

53.   I am familiar with all four levels of the inmate administrative grievance procedure created by the Bureau Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10 - 542.19.

54.   The Bureau has a four-tiered Administrative Remedy Program for inmate grievances, which is codified at 28 C.F.R. § 542.10 *et seq.* The first step is informal resolution with prison staff. 28 C.F.R. § 542.13(a). Requests for Informal Resolution Forms (also known as a BP-8) are not assigned a Remedy ID number and are not tracked. The second step is the filing of a formal Request for Administrative Remedy (also known as a BP-9) at the institution in which the inmate is incarcerated. *See* 28 C.F.R. § 542.14. If the inmate feels the response to his BP-9 is not satisfactory, within 20 calendar days of the date the Warden signed the response, the inmate may then appeal the complaint to the Regional Director, by filing a Regional Office Administrative Remedy Appeal (also known as a BP-10). *See* 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C., by filing a

Central Office Administrative Remedy Appeal (also known as a BP-11). *Id.* An inmate

may not raise in an appeal an issue he did not raise in a lower level filing. *See* 28

C.F.R. § 542.15(b)(2).

*55.* An inmate has not exhausted his administrative remedies until he has

properly sought review at all three formal levels. *Id.*

56. Since July 1990, the Bureau has maintained information related to

administrative complaints filed by inmates under the Bureau Administrative Remedy

Program in SENTRY. One of the many functions of the SENTRY database is to track

administrative remedy complaints and appeals, and it allows one to complete a

computerized search of complaints and appeals filed by a specific inmate.

57. Each formal complaint (i.e. BP-9, BP-10, and BP-11) is logged into

SENTRY at the receiving location. If the complaint is an initial filing, it receives a unique

Remedy ID Number upon initial entry, which follows the complaint throughout the

appeal process. Each Remedy ID Number also contains an extender that identifies the

level of review. The extension F-1 indicates the complaint was filed at the institution

level (BP-9). The extension R-1 indicates the complaint or appeal was filed at the

regional level (BP-10). The extension A-1 indicates the appeal was filed at the national

level (BP-11). So, for example, a formal complaint may be identified as 123456-F1

when filed as a BP-9 at the institution level, as 123456-R1 when filed as a BP-10 at the

regional level, and as 123456-A1 when filed as a BP-11 at the national level. That is,

the unique Remedy ID number follows the complaint through the process but the

extension changes to reflect the level at with the complaint is filed. The number at the

end of the extension may change if the remedy or appeal is initially rejected and is then

17

re-filed due to a technical problem, such as improper form, failing to include documentation, or improper filing at that level (i.e., 123456-F1; 123456-F2, etc.).

58.     On or about June 4, 2020 inmate Wu filed Remedy No. 1022925-F2, in which he contested the Warden's denial of his request for compassionate release/reduction in sentence.   *See* Att. 5, Admin. Remedy Case 1022925-F2 at 1. On June 26, 2020, this remedy was denied.   *Id.* at 2.

59.     As of August 4, 2020, inmate Wu had not submitted an Appeal to the Regional Director.   *See* Att. 6, SENTRY Remedy Case Data 1022925.

60.     On or about May 21, 2020, Wu filed Remedy No. 1020737-F2, in which he contests the denial of home confinement.   *See* Att. 7, Admin. Remedy Case 1020737 at 1.   On June 4, 2020, this remedy was denied.   *Id.* at 2.   Wu was advised if he is not satisfied with this response, he may appeal to the Regional Director.

61.     On or about June 15, 2020, Wu filed an appeal Remedy No. 1020737-R1 to the Regional Director.   *Id* at 6.   On July 24, 2020, this appeal was denied.   *Id.* At 9. Wu was advised if he is not satisfied with this response, he may appeal to the Office of General Counsel.

62.     As of August 4, 2020, inmate Wu has not submitted an Appeal to the Office of General Counsel.   *See* Att. 8, SENTRY Remedy Case Data 1020737.

63.     Inmate Wu has not successfully sought review at all three formal levels in either of his Remedy Cases.   Therefore, he has not properly exhausted the administrative remedy process in regards to home confinement or compassionate release/reduction in sentence.

## XI.     Conclusion

64.     In sum, the Bureau and FCI Englewood take the COVID-19 pandemic extremely seriously and have implemented numerous measures to proactively combat the spread of this disease to inmates and staff members.   The various phases of the Bureau's Action Plan has been designed and implemented in a careful and systematic manner, both nationally and at FCI Englewood in order to mitigate the spread of COVID-19.

65.     In addition to the steps taken at the national level, FCI Englewood itself has taken a number of additional measures to prevent the introduction and spread of COVID-19 in the complex.

66.     The Bureau and FCI Englewood remain flexible in their ability to receive guidance from the CDC and other health organizations and to modify their actions to best respond to the pandemic, according to the quickly shifting needs on the ground.

67.     Inmates at FCI Englewood will continue to be assessed for their eligibility for home confinement.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 6th day of August 2020, in Littleton, Colorado.


_/s/_____
Stacy Collins
Associate Warden
FCI Englewood
Federal Bureau of Prisons

19

Enclosures

    Att. 1  CDC COVID-19 Stop the Spread of Germs Factsheet.

    Att. 2  SENTRY Public Information Inmate Data.

    Att. 3  BEMR 07-27-2019 to 07-29-2020.

    Att. 4  Electronic Inmate Request to Staff and Response.

    Att. 5  Admin. Remedy Packet 1022925

    Att. 6  SENTRY Remedy Case Data 1022925

    Att. 7  Admin. Remedy Packet 1020737

    Att. 8  SENTRY Remedy Case Data 1020737

Case 1:18-cr-00293-RBJ   Document 181-1   Filed 08/07/20   USDC Colorado   Page 21 of 45

# ATTACHMENT 1

# Stop the Spread of Germs

**Help prevent the spread of respiratory diseases like COVID-19.**



Stay at least 6 feet (about 2 arms' length) from other people.



Cover your cough or sneeze with a tissue, then throw the tissue in the trash and wash your hands.



When in public, wear a cloth face covering over your nose and mouth.



Do not touch your eyes, nose, and mouth.



Clean and disinfect frequently touched objects and surfaces.



Stay home when you are sick, except to get medical care.



Wash your hands often with soap and water for at least 20 seconds.



**cdc.gov/coronavirus**

316917-A May 13, 2020 11:00 AM

```
      FLMBW            *        PUBLIC INFORMATION         *      07-27-2020
      PAGE 001         *            INMATE DATA            *      08:22:16
                                AS OF 07-27-2020

      REGNO..: 44803-013 NAME: WU, JOHN VAN

                           RESP OF: ENG
                           PHONE..: 303-763-4300    FAX: 303-763-2553
                                                    RACE/SEX...: ASIAN/PAC.ISL. / MALE
                                                    AGE:  51
      PROJ REL MT: GOOD CONDUCT TIME RELEASE        PAR ELIG DT: N/A
      PROJ REL DT: 11-23-2022                       PAR HEAR DT:
```

```
      G0002       MORE PAGES TO FOLLOW . . .
```

```
   FLMBW              *       PUBLIC INFORMATION         *      07-27-2020
   PAGE 002           *          INMATE DATA             *      08:22:16
                               AS OF 07-27-2020
```

REGNO..: 44803-013 NAME: WU, JOHN VAN

```
                     RESP OF: ENG
                     PHONE..: 303-763-4300   FAX: 303-763-2553
HOME DETENTION ELIGIBILITY DATE: 06-22-2022
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  11-23-2022 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

```
COURT OF JURISDICTION...........: COLORADO
DOCKET NUMBER...................: 1:18-CR-00293-RBJ-1
JUDGE...........................: JACKSON
DATE SENTENCED/PROBATION IMPOSED: 10-15-2019
DATE COMMITTED..................: 03-13-2020
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $1,700.00       $00.00         $00.00       $00.00
```

RESTITUTION...: PROPERTY:  NO  SERVICES:  NO       AMOUNT: $94,829.38

------------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....: 381    21:841 SCH II NARCOTIC
OFF/CHG: 21:841(A)(1),(B)(1)(C) & 18:2: DIVERSION OF OXYCODONE & AIDING
        & ABETTING; 18:1341: MAIL FRAUD (X5)

```
 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   51 MONTHS
 TERM OF SUPERVISION............:    3 YEARS
 DATE OF OFFENSE................: 09-11-2013
```

G0002      MORE PAGES TO FOLLOW . . .

```
  FLMBW            *        PUBLIC INFORMATION          *      07-27-2020
  PAGE 003 OF 003 *           INMATE DATA               *      08:22:16
                          AS OF 07-27-2020


  REGNO..: 44803-013 NAME: WU, JOHN VAN

                     RESP OF: ENG
                     PHONE..: 303-763-4300   FAX: 303-763-2553
  ------------------------CURRENT COMPUTATION NO: 010 ------------------------


  COMPUTATION 010 WAS LAST UPDATED ON 10-31-2019 AT DSC AUTOMATICALLY
  COMPUTATION CERTIFIED ON 10-31-2019 BY DESIG/SENTENCE COMPUTATION CTR

  THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
  CURRENT COMPUTATION 010: 010 010

  DATE COMPUTATION BEGAN..........: 10-15-2019
  TOTAL TERM IN EFFECT............:   51 MONTHS
  TOTAL TERM IN EFFECT CONVERTED..:    4 YEARS      3 MONTHS
  EARLIEST DATE OF OFFENSE........: 09-11-2013

  JAIL CREDIT.....................:    FROM DATE    THRU DATE
                                      06-28-2018   06-29-2018
                                      04-12-2019   10-14-2019

  TOTAL PRIOR CREDIT TIME.........: 188
  TOTAL INOPERATIVE TIME..........: 0
  TOTAL GCT EARNED AND PROJECTED..: 229
  TOTAL GCT EARNED................: 54
  STATUTORY RELEASE DATE PROJECTED: 11-23-2022
  TWO THIRDS DATE.................: 02-08-2022
  EXPIRATION FULL TERM DATE.......: 07-10-2023
  TIME SERVED.....................:    1 YEARS      3 MONTHS     18 DAYS
  PERCENTAGE OF FULL TERM SERVED..: 30.5
  PERCENT OF STATUTORY TERM SERVED: 35.8

  PROJECTED SATISFACTION DATE.....: 11-23-2022
  PROJECTED SATISFACTION METHOD...: GCT REL




  S0055       NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

Pages 26 through 103 redacted for the reason stated

Pages 26-103 REDACTED:  MEDICAL RECORDS

## Christopher Wilkinson - Fwd: ***Request to Staff*** WU, JOHN, Reg# 44803013, ENG-C-A

**From:** ENG/InmateToAWOperations
**To:** Christopher Wilkinson
**Date:** 4/13/2020 8:43 AM
**Subject:** Fwd: ***Request to Staff*** WU, JOHN, Reg# 44803013, ENG-C-A

FYI

>>> ~^!"WU, ~^!JOHN VAN" <44803013@inmatemessage.com> 4/10/2020 5:37 PM >>>
To: Warden Greilick
Inmate Work Assignment: Compassion release

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
2e1b0293-ae69-4460-b208-e0351a5ff06c
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


Dear Warden Grelick,

I have send you a letter 9 days ago without response for Compassionate release and transfer to home confinement.  I forwarding this letter to you again along with Ms. Thomas, Mr. Tucker and Mr. Cedeno.

Thank you for your consideration.
God bless you,
John Van Wu
44803-013
-----WU, JOHN VAN on 4/10/2020 6:17 PM wrote:

>


Dear Ms. Thomas and Mr. Tucker,

I am writing to you to seeking compassionate release and transfer to home confinement due to having Pre-existing medical conditions rendering me susceptible to complications from COVID-19 virus pandemic infection. My medical conditions includes chronic lung Disease with Past TB infection and moderate to severe asthma with hospitalization requiring emergency breathing treatments.  I am currently increasing my asthma medication dosage with Mometason Furoate 220 Mcg to 3 times daily.  I have been treated for severe Respiratory Infections four times within last 6 months.  My last Respiratory Infection was treated on February 5, 2020 with Bactrim

( Sulfamethoxazole/Trimeth 800/160 Mg), Ciprofloxacin 500 mg, Zithromax 250mg, and Prednisone 10mg by Dr. Oba, Mr. Cordova, and Dr. Johnson.  I am suffering with CAD heart disease with Hypertension, Hyperlipidemia ad Type 2 Diabetes which I am currently manage with weightloss and diets.  I am also having arthritis of the back and right hip taking Ibuprofen 800Mg and Acetominophen 650 Mg Daily.

Attorney General William Barr memorandum to Director of B.O.P. on March 26, 2020 to give priority to inmate held in Low or Minimum security facilities and those have not been involved in violence crimes with low pattern scores; inmate who have shown good conduct, and have pre-existing medical condition that make them particularly vulnerable to COVID-19 to granting home confinement.

While Incrcerated I have completed 7 Adult Continuation Education (ACE) classes. I have maintained exemplary conduct throughout incarceration.  I have volunteer to help other inmates in getting their GED Certificate and tutoring inmates in re-entry program and participation in First Step Act program.  My current release plan is to return to my home to live with my wife and our four (4) young children at 810 Kachina Circle, Golden, CO 80401. I am currently have employment schedule with GSI Enterprises where I will work from hoe office to manage consulting and administrave duties.  I will have Insurance coverage throught cigna health insurance coverage provide through my wife company.  I am writingto pleading for your consideration during these challenging time and release me to home confinement so I can take care my family.
Sincerely,
John Van Wu 44803-013

INMATE Wu, John van
Reg. No. 44803-013
Unit Camp


INMATE REQUEST TO STAFF MEMBER

You requested a reduction in sentence (RIS) based on concerns
about COVID-19. After careful consideration, your request is
denied.

Title 18 of the United States Code, section 3582(c)(1)(A),
allows a sentencing court, on motion of the Director of the BOP,
to reduce a term of imprisonment for extraordinary or compelling
reasons. BOP Program Statement No. 5050.50, Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the
types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly
inmate, an elderly inmate with medical conditions, or an "other
elderly inmate"; the death or incapacitation of the family
member caregiver of the inmate's child; or the incapacitation of
the inmate's spouse or registered partner. Your request has
been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread
of COVID-19 and treat any affected inmates. We recognize that
you, like all of us, have legitimate concerns and fears about
the spread and effects of the virus. However, your concern
about being potentially exposed to, or possibly contracting,
COVID-19 does not currently warrant an early release from your
sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.


_____                    4/29/2020
B. Greilick, Warden                        Date

**U.S. DEPARTMENT OF JUSTICE**                    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons

6/4/20

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** WU, JOHN VAN          44803-013   C-05   FDC-ENGLEWOOD
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

I AM APPEALING TO BOP CARES ACT AND PROGRAM STATEMENT
NO.#5050.50, COMPASSIONATE RELEASE/REDUCTION IN SENTENCE
PROCEDURE FOR IMPLEMENTATION OF 18 U.S.C. 3582 (c)(1)(A) and
4205 (g) WITH COMPELLING REASONS TO REQUESTED A REDUCTION IN
SENTENCE (RIS) BASED ON CONCERN ABOUT COVID-19. OR TO PRIORITY
FOR TRANSFER TO HOME CONFINEMENT. I AM APPEALING THE INFORMAL
RESOLUTION AS INSTRUCTED BY COUNSELOR CEDENO, CASE MANAGER WILKINSON
AND ADMINISTRATIVE STAFF MS. THOMAS AND WARDEN GREILICK, AND FOLLOW
ALL RECOMMENDED PROCEDURE PRIOR TO SUBMISSION OF ADMINISTRATIVE
REMEDY. (PLEASE SEE ATTACHED 4 COPIES AS REQUESTED BY PROCEDURES). IN
REFERENCE WITH CDC RISK GUIDELINES WITH HIGHEST RISKS CORMOBIDITY FACTORS
WHO DIED IN FEDERAL BOP FROM COVID-19 INFECTION ARE HIGH BLOOD PRESSURE
CHRONIC RESPIRATORY DISEASE WITH ASTHMA AND DIABETES WHICH I HAVE ALL
3 CONDITIONS; I'M AFRAID THAT IF I CATCH IT, I WILL DIE, I AM PLEADING FOR
YOUR RESPOND AND YOUR CONSIDERATION TO RELEASE ME TO HOME CONFINEMENT

    DATE JUNE 4, 2020          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Refer to response.

FCI Englewood
JUN 0 9 2020
Admin Remedy Program

6-20-20          BG
   DATE                WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 1022985-F2

                          CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

    DATE                RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN      PRINTED ON RECYCLED PAPER      BP–229(13)
                                      APRIL 1982

**BP-229 RESPONSE**                    **Case Number: 1022925-F2**

This is in response to your request for Administrative Remedy received on
June 8, 2020, wherein you appeal the denial of your request for a
Compassionate Release to Home Confinement due to the COVID-19 pandemic.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a
sentencing court, on motion of the Director of the BOP, to reduce a term of
imprisonment for extraordinary or compelling reasons. BOP Program Statement
No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for
Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance
on the types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition; debilitated
medical condition; status as a "new law" elderly inmate, an elderly inmate
with medical conditions, or an "other elderly inmate"; the death or
incapacitation of the family member caregiver of the inmate's child; or the
incapacitation of the inmate's spouse or registered partner.

Additionally, current law and recent guidance from the U.S. Attorney General
directs the Bureau of Prisons to maximize the use of Home Confinement in
appropriate cases, consistent with Bureau of Prisons policy, the needs and
safety of each inmate, and in consideration of the safety of the community.

A review of this matter revealed you have been notified in writing that you
do not meet the criteria for transfer to home confinement under the CARES
ACT or Compassionate Release due to the following reasons:

- You did not provide any medical documentation indicating you have
  serious underlying medical condition(s) which puts you at a higher
  risk of contracting or becoming severely ill from COVID-19
- You have not served 50% or more of your sentence
- You did not provide a viable release plan

The BOP is taking extraordinary measures to contain the spread of COVID-19
and treat any affected inmates. We recognize that you, like all of us, have
legitimate concerns and fears about the spread and effects of the virus.
However, your concern about being potentially exposed to, or possibly
contracting, COVID-19 does not currently warrant an early release from your
sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may
commence an appeal of this decision via the administrative remedy process by
submitting your concerns on the appropriate form (BP-9) within 20 days of
the receipt of this response.

_____                    6/26/2020
B. Grellick, Warden                          Date

```
  FLMCG          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *       08-04-2020
PAGE 001 OF                                                           07:43:18
      FUNCTION: L-P SCOPE: CASE  EQ 1022925     OUTPUT FORMAT: FULL
------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: _____ _____ _____ _____ _____ _____ _____ _____ _____
EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ _____     _____     _____     _____     _____     _____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
       PERSON: ____     ____      ____      ____      ____      ____
         TYPE: ____     ____      ____      ____      ____      ____
EVNT FACL: EQ _____     _____     _____     _____     _____     _____
RCV FACL.: EQ _____     _____     _____     _____     _____     _____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ _____     _____     _____     _____     _____     _____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____




G0002      MORE PAGES TO FOLLOW . . .
```

```
  FLMCG        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-04-2020
PAGE 002 OF 002 *                FULL SCREEN FORMAT            *      07:43:18


REGNO: 44803-013 NAME: WU, JOHN
RSP OF...: ENG UNT/LOC/DST: CAMP                QTR.: C05-001L   RCV OFC: ENG
REMEDY ID: 1022925-F1      SUB1: 13LC SUB2:      DATE RCV:   05-29-2020
UNT  RCV..:CAMP       QTR RCV.: C05-004U      FACL RCV: ENG
UNT  ORG..:CAMP       QTR ORG.: C05-004U      FACL ORG: ENG
EVT FACL.: ENG    ACC LEV:  ENG  2                 RESP DUE:
ABSTRACT.: APPEALING FOR COVID-19 COMPASSIONATE RELEASE
STATUS DT: 05-29-2020  STATUS CODE: REJ STATUS REASON: INF RSF
INCRPTNO.:             RCT:   EXT:  DATE ENTD: 05-29-2020
REMARKS..: YOU NEED TO SUBMIT YOUR COVID-19 COMPASSIONATE
            RELEASE REQUEST TO YOUR UNIT TEAM BEFORE SUBMITTING
            THROUGH THE APPEAL PROCESS.


REGNO: 44803-013 NAME: WU, JOHN
RSP OF...: ENG UNT/LOC/DST: CAMP                QTR.: C05-001L   RCV OFC: ENG
REMEDY ID: 1022925-F2     SUB1: 13LC SUB2:      DATE RCV:   06-08-2020
UNT  RCV..:CAMP       QTR RCV.: C05-001L      FACL RCV: ENG
UNT  ORG..:CAMP       QTR ORG.: C05-004U      FACL ORG: ENG
EVT FACL.: ENG    ACC LEV:  ENG  2                 RESP DUE: SAT  07-18-2020
ABSTRACT.: APPEALING FOR COVID-19 COMPASSIONATE RELEASE
STATUS DT: 06-26-2020  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:             RCT: P EXT: P DATE ENTD: 06-09-2020
REMARKS..:




                  2 REMEDY SUBMISSION(S) SELECTED
  G0000          TRANSACTION SUCCESSFULLY COMPLETED
```

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

1020737-F1  155. 5/21/20 RE                    RTN 5/21/20 RE

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From:  JOHN   VAN   WU            44803-013       C-05      FDC-ENGLEWOOD
       LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT      INSTITUTION

**Part A– INMATE REQUEST**

I AM APPEALING TO ADMINISTRATIVE REMEDY REQUEST IS
BEING REJECTED AND RETURNED TO ME ON 5/21/20 BY YOU,
BECAUSE I DID NOT PROVIDE A COPY OF MY HOME CONFINEMENT
COVID-19 DENIAL LETTER. I GOT A COPY FROM COUNSELOR
CEOGNO AND NOW INCLUDE WITH THIS REQUEST ALONG
WITH MY MEDICAL CONDITIONS LETTER ATTACHED IN FOUR(4)
COPIES PER YOUR REQUEST. I'M IMMEDIATELY CORRESPONDING
REGARDING THE REJECTION LETTER WITHIN 5 DAYS OF THE DATE
OF THIS REJECTION NOTICE. THANK YOU FOR YOUR CONSIDERATION
AND URGENT ACTION. I AM PLEADING FOR YOUR DECISION AND RELEASE
ME TO HOME CONFINEMENT SO I CAN BE WITH MY FAMILY.

MAY 21, 2020                                  John
DATE                                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

*Refer to response.*

FCI Englewood
MAY 2 9 2020
Admin Remedy Program

6.4.20                                        BG
DATE                                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                 CASE NUMBER: 1020737-F2

                                              CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT      INSTITUTION

SUBJECT: _____

_____      ⟳            _____    BP-229(13)
DATE                  PRINTED ON RECYCLED PAPER   RECIPIENT'S SIGNATURE (STAFF MEMBER)    APRIL 1982

USP LVN

**BP-229 RESPONSE**                     **Case Number: 1020737-F2**

This is in response to your request for Administrative Remedy received
on May 29, 2020, wherein you appeal the denial of your request for a
Compassionate Release or release to home confinement due to the
COVID-19 pandemic.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a
sentencing court, on motion of the Director of the BOP, to reduce a
term of imprisonment for extraordinary or compelling reasons. BOP
Program Statement No. 5050.50, Compassionate Release/Reduction in
Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A)
and 4205(g), provides guidance on the types of circumstances that
present extraordinary or compelling reasons, such as the inmate's
terminal medical condition; debilitated medical condition; status as a
"new law" elderly inmate, an elderly inmate with medical conditions,
or an "other elderly inmate"; the death or incapacitation of the
family member caregiver of the inmate's child; or the incapacitation
of the inmate's spouse or registered partner.

Additionally, current law and recent guidance from the U.S. Attorney
General directs the Bureau of Prisons to maximize the use of home
confinement in appropriate cases, consistent with Bureau of Prisons
policy, the needs and safety of each inmate, and in consideration of
the safety of the community.

A review of this matter revealed you were notified in writing that you
do not meet the criteria for transfer to home confinement under the
CARES Act, or for Compassionate Release.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize that you, like
all of us, have legitimate concerns and fears about the spread and
effects of the virus. However, your concern about being potentially
exposed to, or possibly contracting, COVID-19 does not currently
warrant an early release from your sentence or a designation to home
confinement. Accordingly, your RIS request and your request for
placement on home confinement were denied.

Accordingly, your Request for Administrative Remedy is denied. In the
event you are not satisfied with this response and wish to appeal, you
may do so within 20 calendar days of the date of this response by
submitting a BP-230(13) to the Regional Director, Federal Bureau of
Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th
Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


_____                    6/4/2020
B. Greilick, Warden                        Date

May 19, 2020

John Van Wu #44803-013

Appealing for home confinement under BOP Program Statement NO#5050.50 Compassionate Release/Reduction in Sentence procedure for implementation of 18 U.S.C. 3582(c)(1)(A) and 4205(g) and CARES Act.

Dear Sir or Madam,

I am writing to request an immediate release to home confinement, under the BOP Program Statement No#5050.50. along with CARES act, passed on March 27, 2020 and in accordance with the latest directive from BOP Assistant Director for the Reentry Services Division, in a memo dated 4/23/20. In reference with CDC risk guidelines, I have the following health conditions:

1. I will be 51 years old in 45 days. I have suffered from Chronic Lung disease with Asthma and past TB infection since childhood. I have to use inhalers, Prednisone steroid, and breathing machine at various times in order to breathe properly. I have been treated for Respiratory infection 4 times within the last 6 months. My last Respiratory infection was treated on February 5, 2020 with Bactrim (Sulfamethoxazole/Trimeth 800/160 Mg), Ciprofloxacin 500 Mg, and Prednisone 10 Mg by Dr. Oba, Mr. Cordova, and Dr. Johnson. A few days ago, the doctor have to increasing my Asthma medication with Mometasone Furoate 220 Mcg to 3 times daily on April 28, 2020. Dr. Oba and Mr. Cordova also have put me on Albuterol inhaler to help my Asthma condition. I'm still having difficulty of breathing with shortness of breath with the additional medication twice daily.

2. I have Type 2 Diabetes and was taking Metformin 500 Mg twice daily, which I'm temporary stop the medication after I have losses 30 pounds of weight.

3. I have CAD heart disease with high blood pressure and take 81mg of Aspirin and stop taking my Lisinopril daily a few month ago by the doctor after my blood pressure is improving with low salt diet and daily exercise

4. I am also suffering from arthritis of the lower back and right hip and taking Ibuprofen 400 Mg twice daily along with Acetominophen 325 Mg twice daily.

5. I have sleep apnea. I have asked medical for a CPAP machine. I stop breathing while sleeping. My cell mates sometimes wake me up to make sure that I resume breathing. My respiratory illness could be fatal, given this condition with increase risk for COVID-19 infection.

The CDC guideline indicates that the highest comorbidity factors among inmates who have died in federal prisons from the COVID-19 virus are Chronic respiratory disease and high blood pressure. According to the CDC, this puts me at an extremely high risk, especially when compounded by diabetes. As a Medical physician, I am very concern that my chronic health condition put me in a high-risk category for COVID-19, and I'm afraid that if I catch it, I will die.

I meet all of the guidelines for release to home confinement, as set forth in the 4/23/20 memo, except I haven't served 50% of my sentence. In that same memo, the Assistant Director provided for the protection of those of us who have critical vulnerability factors but who don't meet the 50% guideline. In the memo, the Assistant Director said, "If the Warden determines that there is a need to refer an inmate for placement in the community due to risk factors, or as a population management strategy during the pandemic, however, the inmate does not meet the above listed criteria, a packet should be forwarded to the Correctional Programs Division for further review. Packets should be sent to BOP-CPD/Assistant Director from the Warden's mailbox."

It is my understanding that FCI Englewood has at least one staff member who has tested positive for COVID-19 and several others in quarantine who may have been exposed to the virus. I hope it is abundantly clear to you, as he who holds our lives in his hands, that if vulnerable inmates are not released now, it could cost us our lives.

I would appreciate you doing everything within your power to discharge your duty to protect my health and well-being. While incarcerated, I have completed 7 adult Continuation Education (ACE) programs. I have maintained exemplary conduct throughout incarceration. I have volunteer to help other inmates in getting their GED certificate and tutoring inmates in Re-entry programm and participation in First Step Act Program.

I have a reentry plan to live with my wife and four children in our home at 810 Kachina Circle in Golden, Colorado 80401. I have a job with CSI Enterprises where I will work from home office to manage and consulting with administrative duty. I have Insurance coverage throught Cigna Health Insurance coverage provide through my wife company.

Thank you for your consideration and urgent action. I am pleading for your decision during these challenging time and release me to home confinement so I can be with my family.

Sincerely,

John Van Wu #44803-013

INMATE Wu, John van
Reg. No. 44803-013
Unit Camp

INMATE REQUEST TO STAFF MEMBER

You requested a reduction in sentence (RIS) based on concerns
about COVID-19.  After careful consideration, your request is
denied.

Title 18 of the United States Code, section 3582(c)(1)(A),
allows a sentencing court, on motion of the Director of the BOP,
to reduce a term of imprisonment for extraordinary or compelling
reasons.  BOP Program Statement No. 5050.50, <u>Compassionate
Release/Reduction in Sentence: Procedures for Implementation of
18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the
types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition;
debilitated medical condition; status as a "new law" elderly
inmate, an elderly inmate with medical conditions, or an "other
elderly inmate"; the death or incapacitation of the family
member caregiver of the inmate's child; or the incapacitation of
the inmate's spouse or registered partner.  Your request has
been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread
of COVID-19 and treat any affected inmates.  We recognize that
you, like all of us, have legitimate concerns and fears about
the spread and effects of the virus.  However, your concern
about being potentially exposed to, or possibly contracting,
COVID-19 does not currently warrant an early release from your
sentence.  Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.

_____
B. Greilick, Warden

4/31/2020
Date

**U.S. Department of Justice**

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | WU, JOHN VAN | 44803-013 | C-05 | FDC-ENGLEWOOD |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Appealing BOP case #1020737-F2 for home confinement under BOP program Statement No. 5050.50 Compassionate Release/Reduction in Sentence: Procedure for Implementation of 18 U.S.C. 3582(c)(1)(A) and 4250 and CARES Act. I am writing to request an immediate release to home confinement, under the BOP Program Statement No. 5050.50. along with CARES Act, passed on March 27, 2020 and in accordance with the latest directive from BOP Assistant Director for the Reentry Services Division, in a memo dated 4/23/20. In reference with CDC risk guidelines, I have the following health conditions indicates that the highest risk factors among inmates who have died in Federal Prison from the COVID-19 infection are my Chronic lung disease with Asthma and TB infection since childhood, Coronary (heart) Artery Disease (CAD) with high blood pressure (Hypertension), high level of C-Reactive Protein, high Triglycerides, Type 2 Diabetes Mellitus and other medical conditions listed on my medical record on May 2020. FCI Englewood was recently have 4 new cases of COVID-19 inmates infection and at least one staff member who was tested positive for COVID-19 and several others in quarantine who may have been exposed to the virus. I am pleading to the Bureau Of Prison to review my update medical health record history from May 12 to May 28, 2020, and immediately release me to home confinement and I have fully exhausted all the administrative remedy.

DATE    06/15/20                          SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE                                    REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

THIRD COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE          CASE NUMBER: 1020737-R1

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
               LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

USP LVN          DATE          Previous editions not usable          SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
APRIL 1982

RE: JOHN VAN WU #44803-013          June 15, 2020

**Appealing BOP case #1020737-F2 for home confinement under BOP program Statement No. 5050.50 Compassionate Release/Reduction in Sentence: Procedure for Implementation of 18 U.S.C. 3582(c)(1)(A) and 4250 and CARES Act.**

Dear Sir or Madam,

I am writing to request an immediate release to home confinement, under the BOP Program Statement No. 5050.50. along with CARES Act, passed on March 27, 2020 and in accordance with the latest directive from BOP Assistant Director for the Reentry Services Division, in a memo dated 4/23/20. In reference with CDC risk guidelines, **I have the following health conditions** indicates that the **highest risk factors** among inmates who have **died in Federal Prison** from the COVID-19 infection are my **Chronic lung disease** with Asthma and TB lung disease since childhood, Coronary (heart) Artery Disease (**CAD**) with high blood pressure **(Hypertension)**, high level of **C-Reactive Protein**, high Triglycerides, Type 2 **Diabetes Mellitus** and other medical conditions listed on my medical record on **May 2020**. FCI **Englewood** was recently have **4 new cases of COVID-19 inmates infection and at least one staff member** who was tested positive for COVID-19 and several others in quarantine who may have been exposed to the virus. I am pleading to the Bureau Of Prison to review my update medical health record history from **May 12 to May 28, 2020**, and immediately release me to home confinement and I have fully exhausted all the administrative remedy.

**Section** 3582(c)(1)(A) also provides in pertinent part:
The Regional Director or General Counsel may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ---

(i) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The **HEROES Act** passed last week was stated that during the COVID-19 pandemic: Require that juveniles, **people 50 years of age or over, people with medical conditions that increase their risk of harm from COVID-19**, and people within 12 months of release from incarceration **all be released to community supervision** unless there is clear evidence that the person poses a risk of violence. Eliminate the **30-day** waiting period to file a motion for Compassionate Release in Federal Court, and provide counsel and a presumption of release to people seeking compassionate release.

According to other Compassionate Release cases in all other districts, after 30 days from the time an original request for Compassionate Release is request to the Warden, a petitioner may directly move the sentencing court for relief. On **April 2, 2020**, I requested Compassionate Release due to my Medical Conditions and have been overlook and then denied with no clear explanation. I am moving this to your Court for Relief due to the extraordinary and compelling circumstances that prevail due to a COVID-19 Pandemic.

In the case of United State v. **Hakim**, No. 4:05-cr-40025-LLP (D.S.D. Apr. 6, 2020). Judge Piersol **reducing** sentence by an extra 40 months under the First Step Act in light of the extreme danger posed by COVID-19.

United States v. **Foster**, No. 1:14-cr-324-02, Dkt. No. 191 (M.D. Pa Apr. 3, 2020). Judge Jones **granted** defendant's Compassionate Release pursuant to 18 U.S.C. 3582(c)(1)(A), noting the "unpredented" circumstance facing the "our prison system" and finding that COVID-19 is an extraordinary and compelling basis for release.

United States v. **Zukerman**, No. 1:16-cr--194-AT, (S.D.N.Y Apr. 3, 2020). Judge Torres **waived** exhaustion requirements and **granted** immediately compassionate relaease in light of COVID-19 to defendant convicted in a multi-million dollar fraud scheme motivated by greed. "The severity of Zukerman's conduct remains unchanged. What has changed, however, is the environment where Zukerman is serving his sentence. When the Court sentenced Zukerman, the Court did not intend for that sentence to 'include a great and unforeseen risk of severe illness or death' brought on by global pandemic.

United States v. **Resnik**, No. 14-cr-910 (CM), 2020 WL 1651508 (S.D.N.Y.Apr.2, 2020). **Chief Judge Colleen** held **Releasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19.**

1. I will be 51 years old in 17 days. I have suffered from **Chronic Lung disease** with Asthma and past TB infection since childhood with positive **PPD** with 15 mm reaction on **10/24/19**. I have to use inhalers, Prednisone steroid, and breathing machine at various times in order to breathe properly. I have been treated for Respiratory infection 4 times within the last 6 months. My last **Lung** infection was treated on **February 5, 2020** with Bactrim (Sulfamethoxazole/Trimeth 800/160 Mg), Ciprofloxacin 500 Mg, and Prednisone 10 Mg by Dr. Oba, Mr. Cordova, and Dr. Johnson. On **May 12, 2020**, the doctor have to increasing my Asthma medication with Mometasone Furoate 220 Mcg to 3 times daily. Dr. Oba and Mr. Cordova also have put me on Albuterol inhaler to help my Asthma condition. I'm still having difficulty of breathing with shortness of breath with the additional medication twice daily. **(See Attached Update medical record and Lab results on May 12 to May 28, 2020)**

2. I have Type 2 **Diabetes Mellitus** and was taking Metformin 500 Mg twice daily, which I'm temporary stop the medication due to side effect of medication with constant dizziness and headache with rapid weightloss of 30 pounds. My recent blood test at BOP Englewood on **May 27, 2020** was still **high** at 154 and Hemoglobin A1C level **high** at 6.3.

3. I have Coronary (heart) Artery Disease **(CAD)**is the leading cause of death with **high** level of C-Reactive Protein **(CRP)**, **high** Triglycerides and **high** blood pressure **(Hypertension)** 133/93 on **May 12, 2020** and taking 81mg of Acetylsalicylic. **Risk factors** for **CAD** are the same as those for artherosclerosis: low blood levels of high-density lipoprotein(HDL) cholesterol, diabetes mellitus (particularly type 2). High blood levels of C-Reactive Protein on **May 21, 2020** indicate plaque instability and inflammation and may be a stronger predictor of risk of ischemic events and **HEART ATTACK**. (see attached Medical MERCK Manual Reference 18th Edition.)

4. I am also suffering from **Arthritis** of the lower back and right hip and taking Ibuprofen 400 Mg twice daily along with Acetominophen 325 Mg twice daily.

5. I have **sleep apnea**. I have asked medical for a CPAP machine. I stop breathing while sleeping. My cell mates sometimes wake me up to make sure that I resume breathing. My respiratory illness could be **fatal**, given this condition will increase risk COVID-19 infection.

6. **Liver** Disease with Past Hepatitis B infection and recent blood test on May 21, 2020 with **high** Alanine aminotransfererase **(ALT)** enzyme leak from damaged liver cells, making them sensitive indicators of liver injury. (see attached MERCK Manual Reference.)

The **CDC** guideline indicates that the **highest** comorbidity factors among inmates who have **died** in **Federal** prisons from the **COVID-19** virus are **Chronic Lung disease** 34.6% and high blood pressure **(Hypertension)** 49.7% (SEE attached **CDC & USA** TODAY NEWSPAPER DATA) especially when componnded by **Diabetes** 28.3%. According to the **CDC** guidelines, this puts me at an **extremely** high risk of **MORTALITY** over **90%**. I am very concern that my chronic health condition put me in a high-risk category for COVID-19, and I'm afraid that if I catch it, I will **Die**.

I meet **all** of the guidelines for release to home confinement, as set forth in the 4/23/20 memo, I have served over 15 months jail time except I haven't served 50% of my sentence. In that same memo, the Assistant Director provided for the protection of those of us who have critical vulnerability factors but who don't meet the 50% guideline. It is my understanding that FCI **Englewood** was recently have **4 new cases** of COVID-19 inmates infection and at least one staff member who has tested positive for COVID-19 and several others in quarantine who may have been exposed to the virus. I hope it is abundantly clear to you, as he who holds our lives in his hands, that if vulnerable inmates are not released now, **it could cost us our lives**. I would appreciate you doing everything within your power to protect my health and well-being.

I am not violent with a **minimum** PATTERN score. I have **completed** 7 adult Continuation Education (ACE) programs. I have **maintained** exemplary conduct throughout incarceration. I have **volunteer** to help other inmates in getting their GED certificate and tutoring inmates in Re-entry programm and participation in First Step Act Program. I have a reentry plan to live with my wife and four children in our home at 810 Kachina Circle in Golden, Colorado 80401. I have a job with GSI Enterprises where I will work from home office to manage and consulting with administrative duty. I have Insurance coverage provide through my wife company. Thank you for your consideration and urgent action. **I am pleading for your decision** during these challenging time and release me to home confinement to protect my health and well-being. My greatest desire is to be home with my children. It would be devastating to them if I were to Contract COVID-19 and die, leaving them fatherless.

Most Gratefully,

John Van Wu #44803-013 or No. 18-CR-00293-RBJ

FDC/FCI -ENGLEWOOD
9595 WEST QUINCY AVENUE
LITTLETON, CO 80123

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**   1020737-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on June 29, 2020, in which you contend you have been inappropriately denied consideration for a reduction in sentence (RIS).  For relief, you request reconsideration for RIS and you request placement on Direct Home Confinement (HC) due to the COVID-19 pandemic.

We have reviewed your appeal and Warden's response dated June 4, 2020.  A request for reduction in sentence under 18 U.S.C. § 3582 (c)(1)(A) will be considered when there are extraordinary and compelling reasons which warrant the reduction; there is no danger to the safety of any other person or to the community, and the reduction is consistent with policy.  As indicated in the Warden's response, your request was evaluated by staff at the Federal Correctional Institution, Englewood, Colorado.  In making the decision, staff thoroughly reviewed your records and found your circumstances did not meet the policy requirements as outlined in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C §§ 3582 and 4205 (g).

Regarding your request for placement in Direct HC, inmates do not need to apply to be considered for HC.  Unit Team staff are reviewing all inmates to determine eligibility pursuant to the Attorney General's memo regarding Prioritization of HC, in light of the COVID-19 pandemic.

The Federal Bureau of Prisons (BOP) is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates.  We recognize that you have legitimate concerns and fears about the spread and effects of the virus.  You are encouraged to follow staff's recommendations to prevent the spread of the virus.  However, your concerns about being potentially exposed to, or possibly contracting, COVID-19 does not warrant an early release from your sentence or placement on HC.  Accordingly, the institution's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

07/14/2020
Date

J. E. Krueger, Regional Director

```
   FLMCG         *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-04-2020
   PAGE 001 OF                                                       14:07:13
      FUNCTION: L-P SCOPE: CASE  EQ 1020737    OUTPUT FORMAT: FULL
   -------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW----------
   DT RCV: FROM _____ THRU _____ DT STS: FROM _____ THRU _____
   DT STS: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT RDU
   DT TDU: FROM ____ TO ____ DAYS BEFORE "OR" FROM ____ TO ____ DAYS AFTER DT TRT
   STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____
   SUBJECTS: _____ _____ _____ ____ ____ ____ _____ _____ _____ _____
   EXTENDED: _ REMEDY LEVEL: _ _          RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
   RCV  OFC : EQ ____     ____     ____     ____     ____     ____
   TRACK:  DEPT: _____ _____ _____ _____ _____ _____
          PERSON: ____     ____     ____     ____     ____     ____
           TYPE: ____     ____     ____     ____     ____     ____
   EVNT FACL: EQ ____     ____     ____     ____     ____     ____
   RCV FACL.: EQ ____     ____     ____     ____     ____     ____
   RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
   RCV QTR..: EQ _____ _____ _____ _____ _____ _____
   ORIG FACL: EQ ____     ____     ____     ____     ____     ____
   ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
   ORIG QTR.: EQ _____ _____ _____ _____ _____ _____




   G0002      MORE PAGES TO FOLLOW . . .
```

```
FLMCG          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      08-04-2020
PAGE 002 OF      *             FULL SCREEN FORMAT            *      14:07:13


REGNO: 44803-013 NAME: WU, JOHN
RSP OF...: ENG UNT/LOC/DST: CAMP                 QTR.: C05-001L   RCV OFC: ENG
REMEDY ID: 1020737-F1     SUB1: 13LM SUB2:       DATE RCV:    05-19-2020
UNT  RCV..:CAMP        QTR RCV.: C05-004U        FACL RCV: ENG
UNT  ORG..:CAMP        QTR ORG.: C05-004U        FACL ORG: ENG
EVT FACL.: ENG    ACC LEV:  ENG 2 NCR  1           RESP DUE:
ABSTRACT.: COVID19 HOME CONFINEMENT REQUEST
STATUS DT: 05-19-2020  STATUS CODE: REJ STATUS REASON: IAT RSF OTH
INCRPTNO.:          RCT:   EXT:  DATE ENTD: 05-19-2020
REMARKS..: YOU DID NOT PROVIDE A COPY OF YOUR HOME CONFINEMENT
            (COVID-19)-DENIAL LETTER



REGNO: 44803-013 NAME: WU, JOHN
RSP OF...: ENG UNT/LOC/DST: CAMP                 QTR.: C05-001L   RCV OFC: ENG
REMEDY ID: 1020737-F2     SUB1: 13LM SUB2:       DATE RCV:    05-19-2020
UNT  RCV..:CAMP        QTR RCV.: C05-004U        FACL RCV: ENG
UNT  ORG..:CAMP        QTR ORG.: C05-004U        FACL ORG: ENG
EVT FACL.: ENG    ACC LEV:  ENG 2 NCR  1           RESP DUE:  MON  06-08-2020
ABSTRACT.: COVID19 HOME CONFINEMENT REQUEST
STATUS DT: 06-04-2020  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:  DATE ENTD: 05-29-2020
REMARKS..:
```

```
   FLMCG        *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     08-04-2020
PAGE 003 OF 003 *              FULL SCREEN FORMAT            *     14:07:13


REGNO: 44803-013 NAME: WU, JOHN
RSP OF...: ENG UNT/LOC/DST: CAMP                 QTR.: C05-001L   RCV OFC: NCR
REMEDY ID: 1020737-R1    SUB1: 13LM SUB2:        DATE RCV:  06-29-2020
UNT  RCV..:CAMP          QTR RCV.: C05-001L      FACL RCV: ENG
UNT  ORG..:CAMP          QTR ORG.: C05-004U      FACL ORG: ENG
EVT FACL.: ENG   ACC LEV: ENG 2 NCR 1            RESP DUE: FRI  08-28-2020
ABSTRACT.: COVID19 HOME CONFINEMENT REQUEST
STATUS DT: 07-24-2020  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:               RCT: P EXT: P DATE ENTD: 06-29-2020
REMARKS..:




                  3 REMEDY SUBMISSION(S) SELECTED
   G0000        TRANSACTION SUCCESSFULLY COMPLETED
```