UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Case No. 18-cr-00293-RBJ-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JOHN WU,

      Defendant.

---

## ORDER ON RENEWED MOTION FOR COMPASSIONATE RELEASE
---

On July 1, 2020 this Court denied defendant Wu's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court denied the motion because (1) it did not address the Court's jurisdiction to overrule the BOP's decision as to the location of an inmate's placement; (2) the defendant had not shown that he had exhausted his administrative remedies; (3) the defendant had not described the measures taken by the BOP at his facility to protect inmates from COVID-19 or their success or failure; and (4) there did not appear to be an extraordinary or compelling reason for a compassionate reduction or release other than his claimed medical issues. ECF No. 174.

Defendant has renewed his motion. ECF No. 175. Concerning the first issue raised by the Court, he has modified his request to fit the Court's jurisdiction. Specifically, he asks the Court to reduce his sentence from 51 months to 23 months, and to add 28 months of home confinement to the conditions for supervised release. ECF No. 175 at 4.

1

Concerning the second issue, Mr. Wu informs the Court that he first sent a letter to the facilities' warden on April 2, 2020, requesting transfer to home confinement based on medical issues which place him in a higher risk category for complications should he contract COVID-19 (chronic lung disease with TB infection in the past, moderate to severe asthma with hospitalization requiring breathing treatments, recent treatment for severe respiratory infections, hypertension, hyperlipidemia, type 2 diabetes, and arthritis of the back and hip). ECF No. 175 at 6. When he did not receive a response, he submitted two additional requests. He has since learned that his request was denied, but the government acknowledges that he was not informed of the denial due to a "clerical error." *Id.* On May 21, 2020 he filed an administrative appeal, which was denied on June 4, 2020. On June 4, 2020 he appealed to the Regional Director of the BOP, and he had not received a response when he filed the pending motion in this Court on July 24, 2020, *Id.* at 7.

As for the third issue raised by the Court, Mr. Wu states that conditions of confinement at the low-security camp in which he is incarcerated, FPC Englewood, include overcrowding of cells in his pod, making social distancing "impossible;" close contact with other inmates when using phones, computers, the TV room, showers, and meals; lack of separation of inmates with high risk factors from others; and sporadic used of masks by employees. He asserts that more than seven inmates at the facility have contracted COVID-19, and that a total of 90 inmates there are under quarantine. He adds that testing at this facility is limited to symptomatic inmates, and he asserts (with no supporting documentation) that in other BOP facilities where widespread testing has occurred, upwards to 75% have tested positive. *Id.* at 1-3.

As for the fourth issue identified by the Court in denying his initial motion, he essentially indicates that his medical situation alone is sufficient to be an "extraordinary and compelling reason" to remove him from the facility.

The government continues to oppose a compassionate release for Mr. Wu. *See* ECF No. 181. The government's reasons are (1) the seriousness of defendant' wrongful conduct; (2) his labeling of the jury's verdict a "mockery" in his statement of allocution at the sentencing hearing; (3) that he had served only about 36% of the statutory term (full term minus expected good time credit) of his sentence as of June 29, 2018; and (4) his statements about his health are unverified. *Id.* at 1. In addition the government describes measures that the BOP has taken to protect the health of inmates in its facilities and the success of these measures at the BOP's Englewood facilities; as of August 5, 2020 no inmates at FPC-Englewood (where Mr. Wu is housed) were currently positive for COVID-19. *Id.* at 1-5.

The Court acknowledges the seriousness of Mr. Wu's conduct, as it did when it sentenced him. Mr. Wu, previously Dr. Wu, engaged in fraudulent conduct while he was a licensed physician. He was found guilty by a jury of 16 counts related to mail fraud and falsification of records (false billing to insurance companies for services not provided), and he also pled guilty to illegitimate distribution of Oxycodone.

Further, in a bizarre speech that Mr. Wu made following the Court's imposition of sentence at his sentencing hearing (and despite his plea and the advice of his lawyer), he denied any guilt, and he irresponsibly accused the prosecutor and the DEA case agent of "making a mockery on our judicial system," even going so far as to accuse the agent of lying, falsifying evidence, and targeting Mr. Wu for purposes of money, career advancement, or "ethnic cleansing of the medical profession." *See* ECF No. 181-2 (transcript) at 29-36. Suffice it to say that the

3

three-level adjustment Mr. Wu received for acceptance of responsibility was not deserved in retrospect.  The Court's 51-month sentence, which was at the bottom of the Guideline recommendation including the acceptance of responsibility credit, was likewise not deserved in retrospect.  It comes as no surprise to the Court, nor should it surprise Mr. Wu, that the government has opposed a compassionate release.

Nevertheless, I have decided to grant his motion.  First, it is no longer disputed that he has exhausted his administrative remedies.  Second, I do not doubt that Mr. Wu has health issues that put him at a higher than average risk for more serious consequences if he contracts COVID-19.  Courts have been inundated with claims by inmates of medical risk factors, and I have developed a degree of skepticism when such claims are not confirmed by health care professionals.  However, Mr. Wu, himself a health care professional, reported to the Probation Officer before the pandemic that he was a "borderline Type II diabetic," that he had high blood pressure, and that he had a history of possible but undiagnosed malaria from being in a refugee camp in Malaysia.  *See* ECF No. 129 (Presentence Investigation Report) at 22, ¶108-09.  He has now provided further explanation of, and support for, his health claims in his reply brief and exhibits.  ECF Nos. 182, 182-1.  Third, whatever else one might say about Mr. Wu, he has no history of violence.  His illegitimate distribution of opioids was a community safety issue, but he no longer has a license to practice medicine.  And finally, in a sense the greatest punishments that could be inflicted on this individual have been fully inflicted – the loss of his medical license and a career that he worked for many years to attain, and the humiliation that he has suffered in his community.

**ORDER**

Accordingly, after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

1. Defendant's renewed motion for compassionate release, ECF No. 175, is granted, as specifically detailed in the paragraphs that follow.

2. The remainder of defendant's previously imposed sentence of imprisonment of 51 months is modified to time served. This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

3. The defendant's previously imposed conditions of supervised release are modified to include 27 months of enforceable home confinement as an additional condition of supervised release., that number being the approximate remaining term of his statutory sentence.

4. The defendant is expected to make substantial and continuous payments towards his restitution obligation while on supervised release so as to discharge his obligation by the end of his term of supervised release.

DATED this 26th day of August, 2020.

BY THE COURT:

_Brooke Jackson_

_____

R. Brooke Jackson
United States District Judge